440 So.2d 2 (1983)
Ralph Nelson HENSHAW, Petitioner,
v.
Thomas C. KELLY, etc., et al., Respondents.
No. 82-605.
District Court of Appeal of Florida, Fifth District.
October 13, 1983.
Rehearing Denied November 10, 1983.
*3 Joseph C. Jacobs and J. Lawrence Johnston of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for petitioner.
William K. Howell, Jr., Sr. Asst. County Atty., DeLand, for respondents.
ORFINGER, Chief Judge.
Petitioner Henshaw requests the issuance of a writ of certiorari directed to a decision of the circuit court sitting in its review capacity. We have jurisdiction. Fla.R. App.P. 9.030(b)(2)(B).
Petitioner's employment as a deputy sheriff of Volusia County was terminated by the County Manager following a hearing before the County's Personnel Board. Henshaw sought review of this action in the circuit court. The circuit court denied relief in a detailed order which we recite in full.

ORDER DENYING CERTIORARI
This cause came on for hearing on petitioner's Petition for Writ of Certiorari and supplement thereto to review the recommendation and findings of fact of the Personnel Board of Volusia County and the termination letter dated August 10, 1979 of Thomas Kelly, County Manager, which terminated petitioner. The court has reviewed the entire record beginning with the original termination letter from Sheriff Duff to petitioner dated June 6, 1979, the Personnel Board's recommendation for petitioner's suspension to Manager Kelly, the manager's termination letter, the transcript and exhibits from petitioner's hearing before the Personnel Board held July 30 to August 3, 1979, and the tape recorded deliberations and findings of fact of the Personnel Board. The court has further considered the briefs, memoranda of law, and arguments of counsel for the respective parties.

Synopsis of the Facts
Petitioner Henshaw was a senior officer of the Volusia County Sheriff's Department with the rank of Lieutenant when he was terminated by Respondent Sheriff Duff on June 6, 1979 by a letter which placed petitioner on notice of numerous causes for his dismissal. In accordance with the county's Personnel Rules, petitioner requested and was afforded a hearing before the county's Personnel Board. The board exonerated him of some of the charges against him but found that he was responsible for several serious violations of law or policies of the Sheriff's Department. The board recommended suspension for six months without pay, but the county manager, under his authority granted by the Personnel Rules, terminated petitioner by letter of August 10, 1979.
The court finds as follows:
1. The parties earlier filed cross motions for summary judgment on matters in dispute not requiring the preparation of a transcript of the lengthy Personnel Board hearing. Petitioner essentially maintained, first, that the county's Personnel Rules (a county ordinance) did not authorize the manager to modify the Personnel Board's recommendation that petitioner be suspended by determining to affirm petitioner's termination by the sheriff. Second, petitioner maintained that the manager's termination of petitioner when the Personnel *4 Board had recommended suspension departed from the essential requirements of law and ignored the findings of fact of the Personnel Board.
2. The court reviewed the county's Personnel Rules and determined that they provide that an employee disputing action by his superior is entitled to an evidentiary hearing before the county's Personnel Board. The board is obligated, after a hearing, to make findings of fact and recommendations to the county manager. Rule 13 is clear that the manager may modify the disciplinary action recommended by the board if he determines, after review of the board's findings and recommendation, that the recommendation "was not well founded or too severe and may direct that it be cancelled or modified." Rule 13 further characterizes the board's transmission to the manager as "findings and advisory opinion" and further characterizes (in two places) the manager's action as "final". The manager's termination letter of August 10, 1979 states, "Though I accept the foregoing findings of fact, I do not accept the recommendation that termination is too severe. It is my determination that your actions clearly warranted termination." The court found that the manager had authority to determine that the board's recommendation of suspension was not well founded and to modify the discipline recommended by approval of the petitioner's termination.
3. Regarding petitioner's position that the manager ignored the Personnel Board's findings and recommendation, the court found such position to be without merit based upon the recitations in the termination letter and two affidavits of the county manager dated February 4, 1980 and January 26, 1981. The affidavits were furnished the court by petitioner and were uncontroverted. They show that the manager made his decision to terminate petitioner solely upon the tape recorded deliberations and findings of fact of the Personnel Board together with the recommendation of the board. The affidavit of January 26, 1981 states:
"4. The Board's findings of fact and deliberations were tape recorded at the close of Mr. Henshaw's hearing, and I was informed of their existence. I asked a personnel technician to set up the tape recording at the point where the Board's deliberations began, and I then listened to the tape recording. I did not listen to or consider any other portion of the hearing, as I am required by the Personnel Rules to base my decisions only on the Board's advisory opinion and findings of fact.
"5. In listening to the tape recording, I found that the board had determined four separate instances of improper conduct and had discussed the facts of a fifth incident.
"6. After careful consideration of these findings of fact, I decided that the board's recommendation of a six months' suspension was not too severe, in fact, I decided that it was far too lenient considering the gravity of the offenses. In my opinion, the board's recommendation for disciplinary action was not well founded and, accordingly, I decided that the action should be modified to provide for termination of Mr. Henshaw."
4. The court held that the manager's action was in accordance with authority granted by the county's Personnel Rules and that, rather than ignoring the findings of fact and recommendation of the board, he gave them careful consideration. Accordingly, the court denied petitioner's Motion for Summary Judgment. The court found as a matter of law that the manager acted within his authority pursuant to the Personnel Rules and other applicable law, and that his exercise of such authority was not a departure from the essential requirements of law. Summary Judgment was entered in favor of respondents on these issues.
5. Petitioner's second major contention, that there was a lack of competent substantial evidence to support the findings made by the Personnel Board, required a transcript of the hearing and transmission of the exhibits placed in evidence, together *5 with the board's tape recorded deliberations and findings of fact. The parties submitted briefs setting forth their positions, and oral argument was heard on February 23, 1981. Petitioner again raised the issue of the manager's authority under the Personnel Rules and asserted again that the manager ignored the recommendation and findings of the Personnel Board. These issues have previously been determined by the summary judgment in favor of respondents.
6. Petitioner raised a new issue in his brief, maintaining that construction of the Personnel Rules to authorize his dismissal would invalidate the Personnel Rules under the provisions of the county's charter, Chapter 70-966, Laws of Florida. Petitioner asserts that Charter Section 1006 provides for "review" by the Personnel Board of personnel actions of the charter government established under the rules and regulations of the merit system (Personnel Rules). Because the manager is the chief executive of the county government, petitioner maintains that he cannot impose a sanction (termination) more severe than recommended by the Personnel Board. Petitioner cites certain "annotations" to the charter made by a charter study commission; however, such annotations are not a part of the charter and thus cannot be construed as requirements to be followed by the County Council in promulgation of the Personnel Rules ordinance. The annotations are not persuasive at any rate. Generally, they comment that the Personnel Board's members do not hold nor are they candidates for public office or employment and are thus immune to "special or political interest." Petitioner erroneously concludes that the manager has such "special or political interest". Nothing in the annotations or the charter itself suggests that the Personnel Board is "superior" to the manager nor that the board's review of the employee grievances must be final nor that the recommendations of the board may not be modified by the manager. In fact, the board's powers are not set by the charter. Charter Section 1003.3 provides:
"The personnel board shall have all of the powers and duties as described in the merit system rules and regulations as adopted by the council."
The annotation does suggest that it is the intent of the charter to insulate the board from special or political interest. Likewise, the charter itself, at Section 404, specifically insulates the appointed manager from political influence by prohibiting the County Council from interference with the performance of the duties of the manager and his staff. The "political interests" of the manager to which petitioner refers do not exist.
None of the procedures under the Personnel Rules are unusual, a departure from the essential requirements of the law, a denial of due process, or in violation of the County Charter.
7. Petitioner's last contention is that the board's findings of fact are not supported by competent substantial evidence sufficient to sustain either the sanction recommended by the Personnel Board or imposed by the manager.
a) Petitioner was afforded a five day evidentiary hearing before the Personnel Board. Prior to the hearing, he was allowed discovery, was notified of the names and addresses of witnesses the sheriff intended to call and was afforded the opportunity to have his witnesses subpoenaed by the Personnel Board. He was represented by counsel at all times and was allowed to call witnesses on his behalf and to cross examine witnesses against him and to introduce documentary evidence. Review of the transcript reveals that petitioner was truly afforded a due process hearing. The board members, though not judicially trained, gave petitioner full opportunity to defend himself and to present evidence. Closing arguments were allowed at the conclusion of the hearing.
b) The Personnel Board then deliberated and discussed the charges and the evidence produced and made certain findings of fact. Such deliberations were tape recorded and were a part of the consideration of the manager before he rendered his decision. The recording is a part of the record herein. *6 It is not an essential requirement of law or of the county's Personnel Rules that the board make formal written findings as to each factual determination. The tape recorded deliberations and findings of fact are no less substantial and effectual merely because they were not transcribed. The court is impressed with the board's deliberations; they show attentiveness, a careful consideration of the testimony, and attention to the demeanor of the witnesses. The board found in favor of petitioner on several of the charges against him and were ever mindful that the burden of proof was on the county. The board gave every benefit of the doubt to petitioner.
c) The board found as fact regarding the petitioner the following as set forth accurately in the manager's termination letter:
"1. That you fired a firearm into the ceiling of a service station on State Road 15A near DeLand (a public place) in the company of a number of motorcyclists and that such conduct was a violation of the law.
"2. That though it was not proven that you had actually smoked marijuana, you had knowledge of the use of illegal drugs by others and failed to take proper action or make written reports to the Sheriff's Department.
"3. That you engaged in a public altercation in the ABC Lounge in DeLand which caused the management to obtain the services of both the DeLand Police Department and the Sheriff's Department to require you to leave the premises.
"4. That you interfered with the arrest of Martin Fedora by a DeLand police lieutenant."
The board further discussed certain violent and unusual conduct by petitioner on May 6, 1978 which involved numerous members of the DeLand Police Department and the Sheriff's Department together with members of petitioner's family and other citizens. It is clear to the court that but for petitioner's position as a sheriff's lieutenant, he would have been arrested as a result of his conduct. Two of the three members of the board thought that the bizarre conduct was improper but could not agree on whether it indicated permanent instability.
d) The court has reviewed the transcript of the petitioner's hearing and finds that some of the evidence is in conflict but finds that there was competent substantial evidence to support the foregoing findings of fact. It is not the province of this court to reevaluate conflicting evidence as such action would amount to an improper granting of a trial de novo. Campbell v. Vetter, 392 So.2d 6 (Fla. 4th DCA 1981); Hardin v. North Miami Beach, 364 So.2d 843 (Fla. 3d DCA 1978). Unlike the Campbell case, the instant case was not permeated with hearsay; on the contrary, the testimony was primarily by eyewitnesses or participants in the various events. Orders of administrative boards or officers are presumed correct and petitioner has the burden on certiorari review of proving the opposite. Petitioner here has failed to do so. See: Gulf Coast Motor Line v. Hawkins, 376 So.2d 391 (Fla. 1979).
ACCORDINGLY, certiorari is hereby denied.
Our function in reviewing an order of the circuit court which in turn reviewed an administrative order is to determine if the circuit court afforded procedural due process and applied the correct law. City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982). Without receding from or otherwise distinguishing City of Deerfield Beach, the Florida supreme court in Combs v. State, 436 So.2d 93 (Fla. 1983), has again addressed the scope of certiorari review of an appellate decision of the circuit court. In Combs, the supreme court said:
Hence the phrase "departure from the essential requirements of law" should not be narrowly construed so as to apply only to violations which effectively deny appellate review or which pertain to the regularity of procedure. In granting writs of common-law certiorari, the district courts of appeal should not be as concerned with the mere existence of legal error as much as with the seriousness *7 of the error. Since it is impossible to list all possible legal errors serious enough to constitute a departure from the essential requirements of law, the district courts must be allowed a large degree of discretion so that they may judge each case individually. The district courts should exercise this discretion only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.
It is this discretion which is the essential distinction between review by appeal and review by common-law certiorari. See Scholastic Systems, Inc. v. LeLoup, 307 So.2d 166 (Fla. 1974). A district court may refuse to grant a petition for common-law certiorari even though there may have been a departure from the essential requirements of law. See Mystan Marine, Inc. v. Harrington, [339] 337 So.2d 200 (Fla. 1976). The district courts should use this discretion cautiously so as to avert the possibility of common-law certiorari being used as a vehicle to obtain a second appeal.
The record clearly shows that a full, due process hearing was afforded petitioner. The circuit court order finds it to be so, and nothing in the record refutes that finding. The board found petitioner guilty of at least some of the charges levelled against him by the sheriff and recommended a six-month suspension. The County Charter and Personnel Rules, however, make the County Manager the final arbiter of disciplinary proceedings, and he has the final say in the penalty. We should not assume his duties.
Section 13.02 of the Volusia County Personnel Rules provides, in pertinent part:
G. Upon receipt of the findings and advisory opinion of the Personnel Board concerning the appeal, the County Manager shall put in writing the course of action he intends to follow. The decision of the County Manager, with due consideration to the findings and advisory opinions of the Personnel Board, shall be final and the employee shall have no further right of administrative appeal.
H. In cases of disciplinary actions, the County Manager may decide, after consideration of the Board's finding and opinion, that the disciplinary action was not well founded or too severe and may direct that it be cancelled or modified.
The County Manager is thus not bound by the advisory opinion of the Personnel Board, but he may sustain, modify, reverse or enhance disciplinary action taken against any County employee by his or her immediate superior, as the circumstances of the case may warrant. Cf. Victor v. Stierheim, 380 So.2d 1319 (Fla. 3d DCA 1980).
The circuit court afforded procedural due process and applied the correct law. City of Deerfield Beach v. Vaillant, supra. Certiorari here should thus not be used as a means of obtaining a second appeal. We find no violation of a clearly established principle of law which results in any miscarriage of justice, so we deny the writ. Combs, supra.
Certiorari DENIED.
COBB, J., concurs.
SHARP, J., dissents with opinion.
SHARP, Judge, dissenting.
I respectfully dissent in this case because I think at least one substantial breach of the petitioner's due process rights occurred in this proceeding. Therefore, the lower court erred in not quashing the decision reviewed and requiring a new hearing. Apparently, the granting of a writ of common law certiorari in these cases is only proper if a reversal is in the offing. See Combs v. State, 436 So.2d 93 (Fla., 1983) [8 F.L.W. 289].
The record shows that the county manager in this case reviewed not only the taped discussion of the personnel board, but made the board's findings of fact for it. The Volusia County Personnel Rules clearly provide that the board is the fact-finder, and that it should submit its findings to the *8 county manager.[1] In this case, the manager actually wrote the findings, although he had not heard any of the evidence nor read any summary of it. This would ordinarily constitute a departure from the requirements of administrative due process. Greater Boston Television Corp. v. FCC, 444 F.2d 841 (D.C. Cir.1970); Ideal Farms, Inc. v. Benson, 181 F. Supp. 62 (D.C.N.J. 1960). However, in this case, after listening to the tapes, I agree the manager fairly summarized the board's views, and therefore, there was no departure from the essential requirements of law.
However, the manager also read the sheriff's investigative report concerning Henshaw. The sheriff, who acted the role of prosecutor in this disciplinary proceeding, furnished the report to the manager. The report admittedly contained adverse statements by persons who were not called as witnesses at the hearing, and conclusions by attorneys and administrators who were involved in presenting the case against Henshaw. The report was not part of the record. Henshaw was given no chance to refute the damaging statements in the report before the county manager decided to increase his punishment from suspension to firing.
In proceedings where a due process type of hearing is required, the finder of fact must make its determination on the basis of the record and evidence presented at the hearing. 2 K. Davis, Administrative Law Treatise, § 10:2 (2d ed. 1979). The person entitled to a due process type of hearing must be given an opportunity to confront and cross-examine adverse witnesses. 2 K. Davis, supra, at § 12:9. Ex parte contacts defeat both basic principles.
This is why ex parte contacts with decision makers are condemned upon proof that they were made, without necessity to show prejudice. Camero v. United States, 375 F.2d 777 (Ct.Cl. 1967); cf. State v. Hohl, 431 So.2d 707 (Fla. 2d DCA 1983); § 120.66, Fla. Stat. (1981). In this case, the county manager stated in an affidavit filed with the circuit court (the "appellate court") that he had read the ex parte report, but he did not rely upon it in making his decision. But prejudice enough is apparent because the manager imposed a much harsher sanction than did the board. I think a pile of affidavits could not untaint the broth in this case. It should be thrown out, and the soup commenced again.
NOTES
[1] § 13.02(H), Volusia County Personnel Rules.