474 So.2d 410 (1985)
Nancy Susan SANDERS, Appellant,
v.
BUREAU OF CRIMES COMPENSATION, DIVISION OF WORKERS' COMPENSATION, DEPARTMENT OF LABOR AND EMPLOYMENT SECURITY, Appellee.
No. 84-230.
District Court of Appeal of Florida, Fifth District.
August 22, 1985.
*411 Glenn A. Shuman, Ocala, for appellant.
Michael J. Rudicell, Tallahassee, for appellee.
SHARP, Judge.
Sanders appeals from the denial of her claim under the Florida Crimes Compensation Act, Chapter 960, Florida Statutes (1983), after a hearing conducted in Marion County.[1] We reverse because we think the record lacks substantial evidence to support any statutory ground for excluding her recovery.
Section 960.04(2), Florida Statutes (1983) provides that certain categories of people shall not be eligible to receive an award from the trust funds established by the act. The two relevant grounds urged for affirming the denial of Sanders' claim are that she is a person who:
(b) Was engaged in an unlawful activity at the time of the crime upon which the claim is based;
* * * * * *
(d) Is maintaining a sexual relationship with the person who committed the crime, ... .
With regard to the first ground, the parties stipulated at the hearing before the deputy commissioner that Sanders' simultaneous engagement in a crime when she was shot by Hoyt Bedford Graham on August 26, 1981, was not an issue. There was no argument or evidence presented at the hearing concerning this ground, and it is clear that both parties relied upon their stipulation.
We think it is conclusive. Clearly, both the parties and the deputy commissioner are bound by the stipulation. Principe v. Mount Sinai Hospital, 156 So.2d 385 (Fla. 1963). Further, a finder of fact may not rule upon issues which are outside the record and beyond the scope of the hearing. Brown v. Broward Minority Builders Coalition, Inc., 431 So.2d 230 (Fla. 1st DCA 1983); Pompano Roofing Company, Inc. v. O'Neal, 410 So.2d 971 (Fla. 1st DCA 1982); see Henshaw v. Kelly, 440 So.2d 2 (Fla. 5th DCA 1983), rev. denied, 450 So.2d 486 (Fla. 1984) (Sharp, W., J., dissenting); see also Ciechon v. City of Chicago, 686 F.2d 511 (7th Cir.1982), Carnation Company v. Secretary of Labor, 641 F.2d 801, 803 (9th Cir.1981) ("Procedural due process requires that a party against whom an agency has proceeded be allowed *412 to rebut evidence... ."); Ralpho v. Bell, 569 F.2d 607 (D.C. Cir.1977).
With regard to the second ground, we do not think there was any evidence to show that when Graham shot Sanders that he and she were maintaining a sexual relationship. The only two witnesses who testified at the hearing were Sanders and her mother. They said that from March 1980 until July 2, 1981, Sanders was living with Graham. When she discovered drugs, weapons and disguises stored in a room in the house they shared in Chattanooga, she called her mother, who, together with Sanders' grandmother, drove to Tennessee and brought Sanders home with them to Ocala.
Sanders then lived with her parents at their home in Ocala continuously from July 2, 1981 until August 26, 1981, the date of the crime. Graham came to her parents' home on two occasions, and Sanders tried to avoid him. She consented to go out with him on the evening of the crime, so she could convince him to stop bothering her. That night Graham drove Sanders and a girlfriend to another friend's house. While they were still in the car Graham began striking Sanders with his fists. She ran into the house. Graham pulled out a rifle and fired several shots into the house. One struck Sanders in the head seriously injuring her.
Based on this record, we think the deputy commissioner was justified in concluding that prior to Sanders' return to Ocala, she was maintaining a sexual relationship with Graham. However, the only evidence adduced in this case was that this relationship had been terminated almost two months prior to the shooting. The statutory exclusion uses the present tense: "is maintaining a sexual relationship... ." (Emphasis supplied). § 960.04(2)(d). We do not think that was established in this case.
REVERSED AND REMANDED.
DAUKSCH, J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
Whether or not a crime victim "is maintaining a sexual relationship with the person who committed the crime" (§ 960.04(2)(d), Fla. Stat.) is a question of fact and one where the truth is more often ascertained from the overall circumstantial evidence than from the direct testimony of either one or both of the persons involved. This appellate court should not reverse the deputy commissioner as to the factual finding in this case.
Furthermore, the statute is exceedingly ambiguous in the meaning of the words "is", "maintaining" and "relationship." How much, and what type of, sex does it take to establish a "relationship"? Can the relationship be "maintained" in some manner other than by continued sexual activity? After a "relationship" is established, what level of frequency or intensity of what activity does it take to "maintain" that "relationship"? After a particular sexual act, for how long of a period of time does the "relationship" continue so that it can be said that the relationship "is" (present tense) being maintained rather than "did" (past tense) exist, but no longer does? Does that period of time vary depending on the quantity, quality, or length of time, of the prior relationship? Does the continuity of the relationship depend on the intent or willingness of those involved? Both of them, or just one?
Human nature and sex and crime being what they are, the "victim" sex partner will almost always consider the sexual "relationship" to have stopped sometime before the crime occurred and the new relationship of "victim" and "criminal" replaced the prior relationship of lovers; however, the other, or "criminal" sexual partner will usually be of a different opinion. In fact, in most such cases, as in this very case, the crime results from this very difference of opinion between the two intimates as to whether their sexual relationship "is," or is not, still on. It would appear that the intent of the legislature is to avoid compensation of victims of crimes produced by the violence that frequently occurs when one *413 sexual partner desires to continue a sexual relationship and the other partner wants to terminate it.
The factual finding of the deputy commissioner as to the existence of a relationship in this case should be affirmed.
NOTES
[1] This case is properly before us. § 960.09(3), Fla. Stat. (1983).