985 So.2d 615 (2008)
SEMINOLE ELECTRIC COOPERATIVE, INC., Appellant,
v.
DEPARTMENT OF ENVIRONMENTAL PROTECTION, Appellee.
No. 5D07-3005.
District Court of Appeal of Florida, Fifth District.
June 13, 2008.
Rehearing Denied July 16, 2008.
*616 James S. Alves, Gary V. Perko and David W. Childs of Hopping Green & Sams, P.A., Tallahassee, for Appellant.
Jack Chisolm, Tallahassee, for Appellee.
LAWSON, J.
Seminole Electric Cooperative, Inc. ("Seminole") appeals a final order entered by the Secretary of the Department of Environmental Protection ("DEP") pursuant to the Florida Electrical Power Plant Siting Act ("Siting Act" or "Act"), sections 403.501-.518, Florida Statutes (2006). The order denied Seminole's application to construct and operate a third electric generating unit ("Unit 3") at its existing Seminole Generating Station in Putnam County, Florida, despite a stipulation by DEP and all other parties that Unit 3 should be certified; an extensive stipulated record demonstrating compliance with all Siting Act criteria; and the parties' joint submission of a proposed final order with comprehensive factual findings detailing compliance with all Siting Act criteria, which were fully supported by the stipulated record. Under these circumstances, we find that the Secretary erred in denying certification of Unit 3 and reverse the final order on appeal with directions that the unit be certified.

The Siting Act
The Siting Act provides a "centrally coordinated, one-stop licensing process" for power plant projects. § 403.510(3), Fla. Stat. (2006). The Act contemplates review by all state, regional and local agencies with jurisdiction, provides for participation of third parties and the public, and subjects the entire process to Chapter 120 strictures, with the Siting Board typically responsible for final agency action. §§ 403.504, .507, .508(3)-(4), .509, Fla. Stat. (2006). DEP has primary responsibility for administering the Siting Act, processing applications, and analyzing projects for compliance with applicable environmental regulations. §§ 403.504, .507(5), Fla. Stat. (2006). The Siting Act process is, by design, very comprehensive. See §§ 403.504,.5064, .507(5), .508(3), .509, Fla. Stat. (2006).
The test for issuance of a Siting Act certification order is whether the proposed project will:
(a) Provide reasonable assurance that operational safeguards are technically sufficient for the public welfare and protection.
(b) Comply with applicable nonprocedural requirements of agencies.
(c) Be consistent with applicable local government comprehensive plans and land development regulations.
(d) Meet the electrical energy needs of the state in an orderly and timely fashion.
(e) Effect a reasonable balance between the need for the facility as established pursuant to s. 403.519 and the impacts upon air and water quality, fish and wildlife, water resources, and other natural resources of the state resulting from the construction and operation of the facility.
(f) Minimize, through the use of reasonable and available methods, the adverse effects on human health, the environment, and the ecology of the *617 land and its wildlife and the ecology of state waters and their aquatic life.
(g) Serve and protect the broad interests of the public.
§ 403.509(3), Fla. Stat. (2006). Although codified in this manner for the first time in 2006, this test is based on the longstanding legislative intent articulated in Section 403.502, Florida Statutes, and it has not changed in any material way over several decades. See Florida Chapter of the Sierra Club v. Orlando Utils. Comm'n, 436 So.2d 383, 387 (Fla. 5th DCA 1983) (quoting stipulation amongst the parties articulating the purpose of the certification hearing).
The Siting Act was amended during the 2006 legislative session by Chapter 2006-230, Laws of Florida, to provide an expedited process for undisputed cases. As amended, the Siting Act specifies that if the applicant, DEP, and all parties to the proceeding "stipulate that there are no disputed issues of fact or law to be raised at the certification hearing;" and the Administrative Law Judge ("ALJ") assigned to the case by the Division of Administrative Hearings ("DOAH") agrees and grants the parties' request to cancel the certification hearing; then the DEP Secretary, instead of the Siting Board, "shall act upon the application by written order in accordance with the terms of this act and the stipulation of the parties...." §§ 403.508(6)(a), 403.508(6)(d)1., 403.509(1)(a), Fla. Stat. (2006). This 2006 amendment authorizing cancellation of the certification hearing and resolution of all issues by stipulation, was expressly made applicable to all pending Siting Act proceedings. § 403.5185, Fla. Stat. (2006).

Seminole's Unit 3 Application
Seminole is a non-profit rural electric cooperative, created in accordance with Chapter 425, Florida Statutes, which generates and transmits electric power for ten member cooperatives that provide electricity to approximately 1.6 million individuals and businesses in 46 of Florida's 67 counties. Seminole's primary electrical generating facility is the Seminole Generating Station in Putnam County, which currently consists of two 650 megawatt (MW) class coal-fired generating units. The Siting Board (comprised of the Governor and Cabinet) initially permitted the Seminole Generating Station pursuant to the Siting Act in 1979; both units have been operating since 1984.
On March 9, 2006, Seminole filed an application to construct and operate a new 750 MW class coal-fired unit (Unit 3) at the Seminole Generating Station pursuant to Section 403.5064, Florida Statutes (2005). Seminole's three-volume application, consisting of over 2,000 pages, explained in detail how Unit 3 would be integrated into the existing plant site to comply with all applicable federal, state, and local environmental, resource protection, and land use regulations. According to Seminole's filing, Unit 3 would increase the total electrical output from the Seminole Generating Station by 60 percent while meeting all applicable standards. Additionally, Seminole's application demonstrated that the advanced pollution control features of Unit 3, when combined with proposed upgrades to the existing units that would be made in conjunction with construction of Unit 3, would significantly reduce the current environmental impacts of Seminole Generating Station. For example, Seminole's application proposed substantial reductions from current emissions of four regulated air pollutants and the complete elimination of most water pollutants.
The need for Seminole's new electric generating unit was confirmed in a separate adjudicatory proceeding by the Florida Public Service Commission ("FPSC"), *618 which concluded that "there is a need for the proposed SGS Unit 3, taking into account the need for electric system reliability and integrity...." In re: Petition for Determination of Need for Seminole Generating Station Unit 3 Electrical Power Plant in Putnam County, Florida, by Seminole Elec. Coop., Inc., 06 F.P.S.C. 8:140, 8:142 (2006). In certifying the need for Unit 3, the FPSC further found that unless the unit is placed in service by May 2012 "consumers will be faced with an unacceptably high risk of service interruptions." Id. at 8:143.
On March 24, 2006, DEP determined that Seminole's application to construct and operate Unit 3 was "complete" pursuant to section 403.5066, Florida Statutes (2005). This represented DEP's confirmation that Seminole's application addressed all relevant issues. § 403.503(8), Fla. Stat. (2005).
On May 15, 2006, in accordance with section 403.5067, Florida Statutes (2005), DEP notified Seminole of additional information required before the application could be deemed "sufficient." Seminole answered on May 30 and June 30, 2006, responding to 148 questions. After reviewing Seminole's responses, DEP concluded, on July 26, 2006, that Seminole's Unit 3 application was "sufficient." This confirmed that the information provided by Seminole is "sufficient in the comprehensiveness of data or in the quality of information provided" to allow the preparation of agency reports on the project. § 403.503(27), Fla. Stat. (2005).
As contemplated under section 403.507(2)(a), Florida Statutes, a number of state agencies submitted reports to DEP analyzing the Unit 3 project and addressing whether Unit 3 complies with their respective regulatory programs. All of the reporting agencies determined that Unit 3 would comply with the programs they administer, so long as the approval was conditioned on certain requirements outlined in the reports. In November, 2006, DEP issued its Staff Analysis Report, as required under section 403.507(4), Florida Statutes. DEP's Staff Analysis Report included a copy of the FPSC's affirmative Determination of Need as well as the favorable reports and recommendations on Seminole's Unit 3 project from the Florida Fish and Wildlife Conservation Commission, the St. Johns River Water Management District, the Florida Department of Transportation, and the Florida Department of Community Affairs, Division of Historical Resources. DEP's report also analyzed potential impacts on air quality, surface waters, groundwater quality, solid waste disposal requirements, and other issues. DEP identified the proposed conditions of certification determined to be needed or appropriate based upon its review, as well as the reports from all other reporting agencies, and concluded that Unit 3 would meet all of DEP's environmental standards. Accordingly, DEP recommended that Unit 3 be approved under the Siting Act.
In a December 5, 2006, Land Use Order, the Siting Board determined that the Seminole Generating Station site, with Unit 3, is "consistent and in compliance with existing land use plans and zoning ordinances" of Putnam County pursuant to section 403.508(2), Florida Statutes, (2005). In re: Seminole Electric Cooperative Seminole Generating Station Unit 3 Power Plant Site Certification Application No. PA 78-10A2, 29 F.A.L.R. 2578, 2586 (Siting Bd. 2006).
After all of the above-described statutory steps were satisfied, a certification hearing was scheduled before the assigned ALJ.
On January 4, 2007, the participating parties entered into a pre-hearing stipulation *619 to refine and simplify the issues to be addressed at the certification hearing, which was scheduled to begin five days later. The only party opposing certification of Unit 3 at this juncture was the Sierra Club. DEP articulated its position as follows in the pre-hearing stipulation:
It is the Department's position that Seminole's application for site certification for the Project should be granted in accordance with Conditions of Certification proposed by the Department of Environmental Protection. The proposed electrical generating facility meets all requirements of the Florida Electrical Power Plant Siting Act, Section 403.501, et seq. If these conditions are observed by Seminole, the construction and operation of the Project will have minimal adverse effects on the environment and serve the broad interests of the public.
DEP identified its Staff Analysis Report as one of the primary bases for its conclusion:
The Department has prepared a report, pursuant to Section 403.507(4), F.S. That report indicates that, as proposed, the electrical power plant will be in compliance with the rules of the Department, as well as all applicable non-procedural requirements of the agencies having review authority over the Project, subject to appropriate Conditions of Certification.
On January 7, 2007, Seminole and the Sierra Club entered into a settlement agreement that resolved "all issues raised or which could be raised [by the Sierra Club] concerning Seminole's Unit 3 Project in the [Siting Act] proceeding." Seminole committed to purchasing and distributing low-energy, fluorescent light bulbs; committed to a program to develop additional renewable energy resources to offset a portion of the cooperatives' future electrical demand needs; and also agreed to additional air emission reductions.[1] The Sierra Club, in turn, agreed not to contest certification of Unit 3 under the Siting Act, and agreed that "it will stipulate to any motion filed by Seminole under procedures to cancel the certification hearing in accordance with § 403.508(6), Florida Statutes."
On January 8, 2007, Seminole, DEP, and the Sierra Club filed a joint motion at DOAH requesting a continuance that would afford an opportunity to cancel the certification hearing and proceed directly to a DEP final order based on the agreement of all parties that there are no disputed issues of fact or law in accordance with the procedures set forth in sections 403.508(6)(a) and 403.509(1)(a), Florida Statutes (2006). This joint motion noted that DEP had utilized a "similar process" when it approved the Orlando Utilities Commission's (OUC's) Stanton Energy Center Integrated (coal) Gasification Combined Cycle (IGCC) Project one month earlier under the same circumstances. See In re: OUC, Curtis H. Stanton Energy Center, Unit B IGCC Project Power Plant Siting Supplemental Application No. PA 81-14SA3, 29 F.A.L.R. 2551 (DEP Dec. *620 2006). The ALJ granted the parties' joint motion.
On February 22, 2007, Seminole, DEP, the Sierra Club, and all other parties filed a Joint Stipulation Between the Parties, invoking sections 403.508(6)(a) and 403.509(1)(a), Florida Statutes (2006). The Joint Stipulation included twelve paragraphs describing the history of the Unit 3 Siting Act process and seven paragraphs describing the positions of the participating parties, including DEP's recommendation in favor of certification and the parties' unanimous agreement that the Site Certification Application, responses to the agency sufficiency questions, and the agreed-upon Conditions of Certification provided "reasonable assurances that the construction and operation of the proposed Seminole Generating Station Unit 3 Project will comply with all applicable agency standards." The Joint Stipulation (1) confirmed that there were no disputed issues of fact or law as required by section 403.508(6)(a); (2) stated that all Unit 3 impacts "have been assessed and determined," and "have been adequately addressed through the Conditions of Certification agreed to by the parties and attached to [DEP's] Staff Analysis Report ...;" and (3) agreed to the relinquishment of jurisdiction to DEP for issuance of a Final Order in accordance with section 403.509(1)(a), Florida Statutes, the provision added to the Siting Act in 1996 expressly authorizing action on a Siting Act application by stipulation of all parties. Regarding the evidentiary record, the Joint Stipulation also stated:
The parties agree that for purposes of entry of any final order in this cause the evidentiary record shall consist of the Application for Site Certification, Seminole's Response to Sufficiency Request, and the FDEP's Staff Analysis Report, submitted on November 9, 2006, including the several agency reports and proposed conditions of certification [included in DEP's Staff Analysis Report].
Thereafter, the ALJ cancelled the certification hearing and relinquished jurisdiction to DEP for action on the Joint Stipulation.
DEP and Seminole then co-authored and jointly filed a proposed final order as authorized under section 403.508(6)(d)2., Florida Statutes (2006). This proposed order included 51 paragraphs of detailed factual findings, with corresponding citations to the stipulated evidentiary record, addressing all relevant environmental program areas and linking the features of Seminole's Unit 3 project to applicable standards and the Siting Act certification criteria. This Proposed Final Order summarized the agency reports, including the FPSC's affirmative determination that "a need exists for the Unit 3 electrical generating facility and the electricity it will produce," and concluded:
Competent, substantial evidence demonstrates that Seminole Electric Cooperative has met its burden of proof to demonstrate that the Seminole Generating Station Unit 3 project meets the criteria for certification under the [Siting Act]. Seminole has demonstrated that the safeguards for construction and operation of the Unit 3 project are technically sufficient to protect the public welfare of the citizens of Florida and are otherwise reasonable and available methods to achieve that protection of the public. The Unit 3 project will result in minimal adverse effects on human health, the environment, the ecology of the land and its wildlife, and the ecology of state waters and their aquatic life. In addition, the Unit 3 project will not conflict with the State Comprehensive Plan or the local comprehensive plan for Putnam County, Florida. If operated and maintained *621 in accordance with this Final Order and the Department's proposed Conditions of Certification, the Unit 3 project will comply with the applicable nonprocedural requirements of all agencies. Furthermore, certification of the Unit 3 project will fully balance the increasing demand for electrical power plant location and operation in this State with the broad interests of the public that are protected by the [Siting Act].

DEP Secretary's Consideration of the Stipulation and Record
Instead of acting on Seminole's application based upon the parties' stipulations, and the stipulated record, the Secretary, on April 4, 2007, signed an order remanding the Unit 3 case to DOAH on grounds that the Joint Stipulation "did not contain specific findings of fact that would allow me to fulfill my obligations to consider and balance the factors [identified in the Siting Act]." Oddly, the order did not acknowledge or mention the systematic analysis in DEP's Staff Analysis Report, the other agency reports, the PSC's Determination of Need, other portions of the extensive stipulated record, or the detailed findings of fact set forth in the statutorily authorized stipulated proposed final order. Nor did the Secretary's order attempt to identify: (1) any specific legal error or omission in the procedure followed by the parties and the ALJ; (2) any Siting Act criteria not fully addressed by the parties stipulations; or (3) any fact in the extensive stipulated record that would weigh against Siting Act approval.
On June 12, 2007, Seminole filed a motion requesting that DOAH relinquish jurisdiction back to DEP on grounds that all issues had been resolved through stipulations and therefore there were no disputed issues of fact or law requiring an administrative hearing. Ultimately, the ALJ entered an order "declining" and "rejecting" the DEP Secretary's remand to DOAH as contrary to section 403.508(6), Florida Statutes, which requires DEP to "prepare and issue a final order" once the ALJ grants a request to cancel a certification hearing pursuant to the parties' stipulation that all issues relating to certification of a power plant under the Siting Act have been resolved. § 403.508(6)(c), Fla. Stat. (2006).
Thereafter, on August 20, 2007, DEP's Secretary issued the final order on appeal, denying Seminole's application for certification of Unit 3 on grounds that "the parties' stipulation did not contain specific findings of fact" sufficient to allow the agency to apply the statutory test under the Siting Act. The Final Order asserted that in the absence of "specific findings of fact either from the parties or the ALJ," and based on the "sparse Joint Stipulation and record," Seminole did not meet its burden of proving that it meets the Siting Act test for certification. The final order did not identify any environmental standards that Unit 3 cannot meet, or otherwise articulate an environmental rationale for denial.

Analysis
Despite the lengthy factual discussion preceding our analysis, the resolution of this case is quite simple. As a general rule, and absent a showing of fraud, misrepresentation or mistake, stipulations are binding on the parties who enter them, including administrative agencies participating in administrative proceedings and the courts. See, e.g., Gunn Plumbing, Inc. v. Dania Bank, 252 So.2d 1, 4 (Fla.1971); McGoey v. State, 736 So.2d 31 (Fla. 3rd DCA 1999); EGYB, Inc. v. First Union Nat'l Bank of Fla., 630 So.2d 1216 (Fla. 5th DCA 1994); Sunshine Utils. of Central Fla., Inc. v. Florida Public Serv. Comm'n, 624 So.2d 306, 310 (Fla. 1st DCA 1993); *622 Sanders v. Bureau of Crimes Comp., 474 So.2d 410, 411 (Fla. 5th DCA 1985); see also, Doyle v. Dep't of Bus. Regulation, 794 So.2d 686, 692 (Fla. 1st DCA 2001) (an agency's stipulation in an administrative proceeding cannot be "simply set aside as not supported by evidence" by the agency head in a final order). Consistent with this general law, the Siting Act now expressly authorizes the parties in a Siting Act case to proceed by stipulation when no issues are contested and requires the Secretary to "act upon ... the stipulation of the parties in requesting cancellation of the certification hearing." § 403.509(1)(a), Fla. Stat. (2006).
In this case, all parties appropriately entered stipulations resolving every factual and legal issue contemplated by the Siting Act, and also stipulated to an extensive factual record (consisting of thousands of pages of documentation and analysis) for consideration by the DEP secretary. As DEP succinctly stated in the pre-hearing stipulation below, "[t]he proposed electrical generating facility meets all requirements of the Florida Electrical Power Plant Siting Act, section 403.501, et seq." On appeal, DEP also concedes that the stipulated factual record fully supports the detailed findings set forth in the stipulated proposed final order; fully supports the stipulated conclusion that Unit 3 should be certified; and contains no facts that weigh against certification. We find no basis for the Secretary's assertion that the joint stipulation and record are "sparse," or fail to demonstrate compliance with all Siting Act criteria. In short, the Secretary had no legal basis to deny certification of Seminole's Unit 3, given the parties' stipulations in this case.
Accordingly, we reverse the order on appeal and remand this matter to the Secretary with instructions to issue a final order granting certification, consistent with the parties' stipulations and with the agreed recommended final order.
REVERSED AND REMANDED WITH DIRECTIONS.
MONACO and TORPY, JJ., concur.
NOTES
[1] The January 7, 2007 Seminole-Sierra Club settlement agreement was a complete settlement concerning all Siting Act certification issues, and a partial settlement concerning a separate Prevention of Significant Deterioration ("PSD") air emissions permit required for Unit 3. Certain federally delegated or approved environmental permits, such as PSD permits, are issued separately from the Siting Act certification. § 403.509(3), Fla. Stat. (2005). DEP issued the proposed PSD permit for Unit 3 on August 24, 2006, and included a copy of it in the Staff Analysis Report. Subsequently, Seminole and the Sierra Club entered into a second settlement agreement in which Seminole agreed to even greater emission reductions and an enhanced renewable energy program, and the Sierra Club committed not to contest issuance of the PSD air emissions permit.