UNITED STATES of America,
Plaintiff-Appellee,

v.

Rolando CERDA–PENA,
Defendant-Appellant.

No. 85–3118.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 6, 1986.

Decided Sept. 16, 1986.

Lance Caldwell, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Linda Friedman Ramirez, Salem, Or., for defendant-appellant.

Before SKOPIL and NELSON, Circuit Judges, and LYNCH,* District Judge.

LYNCH, District Judge:

I. Introduction

Appellant, Rolando Cerda-Pena, has appealed his conviction for re-entering the United States in violation of 8 U.S.C. section 1326. Appellant contends that his pretrial motion to dismiss the indictment against him was improperly denied.

An alien may not be convicted under section 1326 for illegally re-entering

* Honorable Eugene F. Lynch, United States District Judge, Northern District of California, sitting by designation.

the United States unless he or she has previously been lawfully deported. *United States v. Bejar-Matrecios,* 618 F.2d 81, 82 (9th Cir.1980). Appellant was deported to Mexico on December 5, 1984. That deportation was the basis for the indictment charging appellant with violating section 1326. In the motion to dismiss the indictment, appellant argued that the following irregularities rendered his December 5, 1984 deportation unlawful:[1] (1) the Immigration and Naturalization Service (INS) failed to inform appellant of his right to contact the Mexican Consul, (2) the immigration judge failed adequately to apprise appellant of his right to be represented by counsel, and (3) the INS did not provide appellant with a competent interpreter at his deportation hearing.

The district court found that appellant's deportation was lawful and therefore denied the motion to dismiss. The court ruled that neither a failure by the INS to inform appellant of his right to contact his country's Consul nor a failure by the immigration judge adequately to apprise appellant of his right to representation could render appellant's deportation unlawful unless the failure was prejudicial. It then held that, even assuming both of the alleged failures occurred, the appellant had not been prejudiced. The court based its holding on a finding that appellant had not submitted evidence indicating that either of the alleged omissions actually had the potential for affecting the outcome of the deportation proceedings. The district court also concluded that the errors committed by appellant's interpreter were harmless and had not resulted in a denial of appellant's due process rights.

Appellant contends that the district court erred in denying appellant's motion to dismiss the indictment. The appellant argues that the district court applied an improperly strict standard on the issue of prejudice with respect to the alleged omissions by the INS and the immigration judge. Appellant asserts that he showed prejudice by producing evidence indicating that he would have availed himself of the procedural protections denied him and that he was not required to show that such an availment actually had the potential for changing the outcome of the proceedings. The appellant also challenges the district court's ruling that the errors committed by the interpreter at his deportation hearing did not constitute a denial of due process. Thus, the issues on appeal are (1) whether the district court correctly applied the proper legal standard in finding that neither of the alleged omissions by the INS and the immigration judge could have been prejudicial and (2) whether the district court properly determined that the errors by appellant's interpreter at the deportation hearing did not constitute a denial of due process.

## II. District Court's Finding of No Prejudice

■ INS regulations require that the INS notify a detained alien of his or her right to speak to the consul of the alien's country, 8 C.F.R. § 242.2(e), and that the immigration judge notify the alien at the deportation hearing of the alien's right of representation, 8 C.F.R. § 242.16(a).[2] Appellant contends that these regulations were violated during his deportation proceedings.

---

**1.** The Ninth Circuit allows a defendant charged with violating 8 U.S.C. section 1326 to collaterally attack the underlying deportation. *United States v. Nicholas-Armenta,* 763 F.2d 1089, 1090 (9th Cir.1985). A number of other circuits do not allow such an attack. *See Petrella v. United States,* 464 U.S. 921, 104 S.Ct. 289, 78 L.Ed.2d 265 (1983) (Justice White dissenting from the denial of certiorari).

**2.** Section 242.16(a) requires immigration judges to advise an alien, at his or her deportation hearing, of the alien's right to obtain representation. 8 C.F.R. § 242.16(a). An alien is, however, not entitled to government appointed counsel to represent the alien at his or her deportation hearing. *United States v. Gasca-Kraft,* 522 F.2d 149, 152 (9th Cir.1975).

This Circuit has held that a violation of an INS regulation does not invalidate a deportation proceeding unless the regulation serves a purpose of benefit to the alien. *United States v. Rangel-Gonzales*, 617 F.2d 529, 530 (9th Cir.1980). In addition, even if the regulation does serve a purpose of benefit to the alien, a violation of that regulation will not render a deportation unlawful unless the violation prejudiced the interests of the alien protected by the regulation.[3] *Id.* Thus, the violation of an INS regulation will render a deportation unlawful if the regulation in question serves a purpose of benefit to the alien and its violation prejudiced the interests of the alien that it was intended to protect. *Id.*

Both of the regulations in question clearly serve purposes of benefit to aliens. *See Id.; Rios-Berrios v. INS*, 776 F.2d 859, 862–64 (9th Cir.1985). Moreover, the trial court assumed for purposes of the motion to dismiss that both regulations were violated. Consequently, in order for the trial court to have correctly found that appellant's deportation was lawful, it must have properly determined that the assumed violations were not prejudicial.

On appeal, appellant does not seriously contend that he produced evidence at the motion to dismiss showing that the outcome of his deportation proceedings might have been different had the assumed violations not occurred.[4] Rather, the appellant

---

**3.** *Rios-Berrios v. INS*, 776 F.2d 859, 863–64 (9th Cir.1985), contains dicta suggesting that an effective denial of counsel might be considered *per se* prejudicial. The immigration judge in *Rios-Berrios*, after having granted two one-day continuances in order for the alien to obtain representation, proceeded with the alien's deportation hearing despite clear evidence that the alien needed and desired more time to obtain representation. The current case is distinguishable from *Rios-Berrios* because it does not involve a clear denial of representation. At the deportation hearing, appellant was informed of his right to representation and asked if he wished to proceed without representation. After apparently showing an initial desire not to proceed, appellant asked the immigration judge "why?". The judge responded that he wanted to ask the appellant about his status in the United States, and the defendant then indicated that he was willing to proceed. The appellant does not contend that he did not voluntarily proceed without representation, but argues that he was inadequately apprised of his right to representation and of how that right may be exercised. While recognizing that an outright refusal to allow an alien the opportunity to obtain representation may be such an egregious violation of due process so as not to require any further showing of prejudice, this Court believes that an immigration judge's failure adequately to apprise an alien of his or her right to representation should only invalidate the deportation if actual prejudice is shown, as is the case with other violations of INS regulations and of due process. *See United States v. Rangel Gonzales*, 617 F.2d 529, 530 (9th Cir.1980) (challenge based on violation of an INS regulation must include a showing of prejudice); *United States*

*v. Nicholas-Armenta*, 763 F.2d 1089, 1091 (9th Cir.1985) (due process challenges must include a showing of prejudice).

**4.** Appellant submitted an affidavit in connection with the motion to dismiss in which he contended that the failures to advise him of his right to contact the Mexican Consul and adequately to explain his right of representation were prejudicial. He asserted that these failures prejudiced him by depriving him of the opportunity to enlist the ,help of the Mexican Consul in contacting family members and of the opportunity to be represented at his deportation hearing. The district court concluded that the evidence did not show that contacting appellant's family members or obtaining representation *actually* had the potential for affecting the outcome of the deportation proceedings. Appellant also submitted two affidavits which together indicate that the assistance of the Mexican Consul was available and is generally desirable and that legal representation at a deportation hearing is also desirable. The first affidavit was prepared by the Mexican Consul in Seattle. It stated that when a detainee of the INS requests the assistance of the Consul's office, the office will send a representative to visit the detainee, help him contact friends and an attorney, possibly send a Consular representative to the deportation hearing, and, at the very least, recommend that the detainee obtain an attorney or other free legal assistance. The second affidavit was submitted by Margaret Godfrey, Director of the Immigration Counseling Service in Portland, Oregon. She stated that an "alien, facing deportation proceedings, should definitely have access to legal advice," without which "it is all too likely that equities in the United States,

argues that he was only required to show that absent the violations he would have received assistance in resisting deportation and, therefore, that the trial court erred in holding that there was no prejudice. In support of this proposition, the appellant cites the following language from *United States v. Rangel-Gonzales,* 617 F.2d 529 (9th Cir.1980):

> In sum, the appellant in this case carried his initial burden of going forward with evidence that he did not know of his right to consult with consular officials, that he would have availed himself of that right had he known of it, and that there was a likelihood that the contact would have resulted in assistance to him in resisting deportation. There was no evidence to rebut that showing and the indictment should have been dismissed.

*Id.* at 533.

Notwithstanding the above quotation from *Rangel-Gonzales,* the language of the opinion, considered in its entirety, does not support appellant's argument.[5] *Rangel-Gonzales* involved Ninth Circuit review of one of two companion cases that had been previously remanded to the district court for further proceedings on the issue of whether a failure to advise two aliens of their right to contact their country's consul had been prejudicial. In determining whether the district court had correctly found no prejudice, the court quoted favorably the earlier instructions given to the district court on how the issue of prejudice should be resolved.[6] Those instructions stated the following:

> On remand the aliens should be allowed the opportunity to demonstrate prejudice resulting from INS regulation violations. The district court will determine whether violation of 8 C.F.R. § 242.2(e) harmed the alien's interests in such a way as to *affect potentially the outcome* of their deportation proceedings. *Any such harm should be identified specifically.*

*Id.* at 530 (emphasis added) (quoting *United States v. Calderon-Medina,* 591 F.2d 529, 532 (9th Cir.1979)).

■ The above-quoted language clearly contemplates that in order to prove prejudice an alien must specifically show that

---

which such a person may have, would be overlooked." Neither affidavit suggested that, given the specific circumstances of the appellant, the assistance of the Mexican Consul or of an attorney might have actually affected the outcome of appellant's deportation hearing.

5. Moreover, the facts in *Rangel-Gonzales* are distinguishable from those of the current case. *Rangel-Gonzales* involved the failure to apprise a detained alien of his right to contact his country's consul. The record in *Rangel-Gonzales* contained evidence clearly suggesting that the assistance of the alien's consul could have affected the outcome of the deportation proceeding. In addition to submitting an affidavit from the Mexican Consul similar to the one submitted in this case, *see infra* note 3, the alien in *Rangel-Gonzales* also submitted an affidavit by an experienced immigration attorney stating that an individual in the alien's position could have, with appropriate assistance, obtained voluntary departure rather than deportation. *Rangel-Gonzales,* 617 F.2d at 531. This affidavit provided a clear basis for the court's conclusion that "[t]he appellant did show some likelihood

that had the regulation been followed his defense and the conduct of the hearing would have been materially affected." *Id.*

In addition, the Court has found no cases decided subsequent to *Rangel-Gonzales* that would support appellant's interpretation of that opinion. Although a number of cases mentioning the issue of prejudice caused by INS violations have been subsequently decided, none has provided further elaboration of the standard enunciated in *Rangel-Gonzales. See, e.g., Abedi-Tajrishi v. INS,* 752 F.2d 441, 443 (9th Cir.1985); *United States v. Arambula-Alvarado,* 677 F.2d 51, 53 (9th Cir.1982); *Tejeda-Mata v. INS,* 626 F.2d 721, 725–26 (9th Cir.1980), *rehearing denied,* 665 F.2d 269 (1981), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982).

6. Indeed, the court explicitly stated that it had been "called upon to apply the standards laid down in *United States v. Calderon-Medina,* 591 F.2d 529 (9th Cir.1979), for collateral attacks on deportation based on violations of INS regulations." *Rangel-Gonzales,* 617 F.2d at 530.

his or her interests protected by an INS regulation that has been violated during the alien's deportation proceedings have been prejudiced in a manner so as potentially to affect the outcome of the proceedings; a mere showing that the alien would have availed himself of the procedural protections denied him is not enough.[7] After having quoted its earlier instructions to the district court, the court in *Rangel-Gonzales* further stated as follows:

> Thus, ... the initial burden of production of evidence showing prejudice is on the defendant. The prejudice must relate to the interest protected by the regulation. Since the interest of the alien protected by this regulation related to obtaining assistance in preparing a defense to the deportation, we must consider whether appellant demonstrated that such interests were *materially* affected.

*Id.* at 530 (emphasis added).

■ The Court holds that the standard enunciated in *Rangel-Gonzales* requires that an alien produce some concrete evidence indicating that the violation of a procedural protection actually had the potential for affecting the outcome of his or her deportation proceedings. This finding is consistent with the *Rangel-Gonzales* court's approving quotation of the instructions given earlier to the district court in that case and with the court's use of the term "material," which suggests that the alien's interests must be affected in a man-

ner which actually can make a difference. Thus, an alien who wishes to challenge the legality of a previous deportation bears the initial burden of producing evidence indicating that a violation of an INS regulation occurring during the alien's deportation prejudiced his or her interests protected by the regulation in such a manner so as actually to have had the potential for affecting the outcome of the proceedings.[8] Once such a prima facie showing of prejudice is made, the burden then shifts to the government to show that the violation could not have changed the outcome of the deportation proceedings.

■ In light of this Court's clarification of the *Rangel-Gonzales* standard, the district court's finding of no prejudice is affirmed. The district court applied the proper legal standard when it required appellant to make some showing that the alleged violations actually had the potential for affecting the outcome of his deportation proceedings. Moreover, the district court's determination that such a showing was not made was not erroneous.

## III. District Court's Finding of No Denial of Due Process

Appellant also argues that he was denied due process because the interpreter at his deportation hearing was incompetent. This claim is based exclusively on two errors made by the interpreter. The first error

---

**7.** Contrary to the dissent's characterization, the *Rangel-Gonzales* court did not satisfy itself by finding that, absent the INS violation, the alien's defense, though no more meritorious, would have been in some vague sense better. The court stated that the alien showed that consultation with the consular officials, denied him by the INS violation, "may well have led *not merely* to appointment of counsel, but also to community assistance in *creating a more favorable record* to present to the immigration judge on the question of deportation. The appellant did show *some likelihood* that had the regulation

been followed his defense and the conduct of the hearing would have been *materially* affected." *Rangel-Gonzales,* 617 F.2d at 531. In this case, appellant did not show some likelihood that, but for the INS violations, the record would have been more favorable in a material way.

**8.** The Court expresses no opinion as to whether a lesser showing of prejudice should be required on a direct appeal of a deportation decision as opposed to a collateral attack of a previous deportation.

occurred when the immigration judge asked appellant whether he admitted the allegation of re-entering the United States on or about July 12, 1983. The interpreter translated the date as on or about July 1, 1983, and appellant admitted to having re-entered the United States on that date. The second error occurred when the appellant was asked how long he had been in custody. Appellant responded that he had been in custody since July of the prior year (1983), but the interpreter stated in English June of the prior year. Thus, the English version of the hearing transcript contains inconsistent statements by the appellant indicating that he re-entered the United States on or about July 12, 1983 and that he had been in custody in the United States since June of 1983. Appellant claims that as a result of these errors he was improperly deported for admitting re-entering on or about July 12, 1983 when in fact he admitted re-entering the United States on or about July 1, 1983.

 The district court's finding that the errors by the interpreter were harmless is correct. The record indicates that the appellant's claim of incompetency is based solely on the two misstatements by the interpreter, neither of which was prejudicial to the appellant. Whether the appellant admitted to re-entering the country on July 1, 1983 or on July 12, 1983 is of little consequence. The important point is that the appellant did admit to re-entering the country. The discrepancy concerning the exact date upon which the appellant re-entered the country was harmless and was therefore not a basis for dismissing the indictment. Cf. *Tejeda-Mata v. INS*, 626 F.2d 721, 725–26 (9th Cir.1980), *rehearing denied*, 665 F.2d 269 (1981), *cert. denied*, 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982) (district court's failure to provide adequate translating found harmless error). Moreover, this Court finds no justification for holding that two such minor errors by appellant's interpreter can support a finding that the interpreter was generally incompetent and, as consequence, that the appellant was denied due process.

## IV. Conclusion

Having determined that in order for an alien's deportation to be declared illegal because of procedural violations the alien must make some factual showing that the violations may have had an actual effect on the outcome of the deportation, this Court affirms the district court's conviction of appellant. The district court correctly applied the proper legal standard in holding that none of the alleged procedural violations relating to appellant's deportation was prejudicial. Moreover, the district court's holding that any mistakes made by the interpreter at appellant's deportation hearing constituted harmless error was not erroneous.

Affirmed.

NELSON, Circuit Judge, dissenting:

Because I believe that *United States v. Rangel-Gonzales*, 617 F.2d 529 (9th Cir. 1980), compels reversal, I respectfully dissent.

In *Rangel-Gonzales*, we held that an alien establishes prejudice where he shows that "he did not know of his right to consult with consular officials, that he would have availed himself of that right had he known of it, and that there was a likelihood that the contact would have resulted *in assistance to him in resisting deportation.*" 617 F.2d at 533 (emphasis added). The affidavits submitted in that case, which we found sufficient to establish prejudice, showed that Rangel-Gonzales would have contacted his consul had he been informed of his right to do so, that the Mexican Consul would have helped the alien contact friends and an attorney, and that various family members and social groups would have been of assistance had they been contacted. *Id.* at 531. The affidavits submitted by Cerda-Pena in the present

case are nearly identical, *see ante* at 1378 n. 4, and thus, also establish prejudice.

In an unsuccessful attempt to distinguish *Rangel-Gonzales* from the present case, the majority relies on Rangel-Gonzales's submission of an affidavit from an experienced immigration attorney. The affidavit stated that with appropriate assistance, an individual in Rangel-Gonzales's position could have obtained voluntary departure rather than deportation. 617 F.2d at 531. Contrary to the majority's assertion, however, the availability of voluntary departure did *not* provide the basis for our conclusion that Rangel-Gonzales "did show some likelihood that had the regulation been followed his defense and the conduct of the hearing would have been materially affected," *ante* at 1378 n. 5. Rather, we based that conclusion on the alien's showing that "he did not know of his right to contact the consular officials, that he would have done so had he known, and that such consultation may well have led not merely to appointment of counsel, but also to *community assistance in creating a more favorable record* to present to the immigration judge on the question of deportation." *Id.* (emphasis added). The affidavits submitted by Cerda-Pena in the present case establish no less.

The majority maintains that "the *Rangel-Gonzales* court did not satisfy itself by finding that, absent the INS violation, the alien's defense, though no more meritorious, would have been in some vague sense better." It then underscores the court's finding that consultation with consular officials may well have led to community assistance in creating a more favorable record. *Ante* at 1379 n. 7.

However, at no point in *Rangel-Gonzales* did we discuss *how* the record would have been more favorable. Moreover, in rejecting an INS affidavit stating that Rangel-Gonzales was ineligible for voluntary departure, we stated: "That affidavit could have taken into account only the record presented to the judge in the actual deportation proceeding and could not have taken into account any factors *which might have been developed* ... as a result of consultation with consular officials." 617 F.2d at 531 (emphasis added). Again, following this statement, nowhere did we indicate what factors might have been developed. Rather, we assumed that with the aid of consular officials, there *might have been* additional factors. It was sufficient to find prejudice that the violation "frustrate[d] the purpose ... which the regulation implements, namely to promote assistance to aliens from officials of their country of origin." *Id.* at 533. Thus, I believe that Cerda-Pena's defense has been "materially affected" as that term is properly understood.

In my view, the majority errs by ignoring the clear language of *Rangel-Gonzales*, and focusing instead on *United States v. Calderon-Medina*, 591 F.2d 529 (9th Cir. 1979). This error may stem from a failure to recognize the procedural relationship between those two cases. The claims of *both* Calderon-Medina and Rangel-Gonzales were before us as companion cases in *Calderon-Medina*. In that decision, our task was merely to determine whether the prejudice standard applied at all, and not to elaborate on the content or application of that standard. We thus remanded both claims, directing the district court to determine whether the INS's violations prejudiced Rangel-Gonzales and Calderon-Medina. In the process of remanding, we off-handedly mentioned the prejudice "standard" to which the majority adheres.

By contrast, in *Rangel-Gonzales*, we were reviewing the district court's decision, made pursuant to our remand in *Calderon-Medina*, regarding prejudice. It was only in *Rangel-Gonzales* that we fully discussed the *content* of the prejudice standard. In so doing, we clearly focused on the alien's ability to obtain legal, community, and family assistance, not on the substance of what that assistance actually would have yielded. *See* 617 F.2d at 531 (INS affidavit insufficient because it fails to include any factors which "might have been" developed as a result of consultation with consular officials). We did so because the prejudice inquiry is directed to the interest protected by the violated regulation, and the regulation violated in *Rangel-Gonzales*, as in the

**1382**

present case, protected the alien's interest in *"obtaining assistance* in preparing a defense to the deportation...." *Id.* at 530 (emphasis added). The majority apparently overlooks this interest, and the procedural relationship between the cases, in adopting the "standard" mentioned in *Calderon-Medina* only as an afterthought, and ignoring the more thoroughly reasoned standard expressly set forth in *Rangel-Gonzales.*

Given the *Rangel-Gonzales* standard, I would reverse the district court's finding of no prejudice. Because the district court assumed for the purpose of its ruling that the alleged violations had occurred, I would remand to the district court for a determination of whether the INS in fact violated the regulations at issue.