**Office of the Attorney General**
and the Immigration Service of the Commonwealth
of the Northern Mariana Islands,
Petitioners/Appellees,

v.

Veronica C. **Honrado,** a.k.a.
Veronica H. Estrada, Respondent/Appellant.
Appeal No. 94-044
Civ. Action No. 94-0883
June 27, 1996

Argued and Submitted October 12, 1995

Counsel for Appellant: Bruce L. Mailman, Saipan (White, Pierce, Mailman & Nutting)

Counsel for Appellees: Virginia Sablan, Assistant Attorney General, Saipan

BEFORE: TAYLOR, Chief Justice, and VILLAGOMEZ and ATALIG, Associate Justices.

TAYLOR, Chief Justice:

¶1 ▇ This is an appeal from an order of deportation entered against Veronica C. Honrado ("Honrado"), by the trial court on October 3, 1994. We have jurisdiction pursuant to 1 CMC § 3102 (a) and 3 CMC § 4342. We reverse.

**ISSUE PRESENTED AND
STANDARD OF REVIEW**

¶2 The issue before us is whether Honrado's statutory or due process rights were violated because the trial court judge did not inquire at the deportation proceeding whether she understood and waived her right to counsel of choice.

¶3 We review both the statutory and constitutional sufficiency of the proceedings de novo. *See Office of Att'y Gen. v. Rivera*, 3 N.M.I. 436, 441 (1993) (deportation proceedings); *Commonwealth v. Kaipat*, 2 N.M.I. 322, 327-28 (1991) (interpretation and application of statute).

## FACTS AND PROCEDURAL BACKGROUND

¶4 Honrado is a citizen of the Philippines currently residing in the Commonwealth of the Northern Mariana Islands ("CNMI"). She lives with her husband, Michael Batobato Estrada, and four minor children who are between the ages of two and five years. Mr. Estrada is a nonresident worker of Philippine citizenship. Honrado's children are all United States citizens.

¶5 Honrado entered the CNMI on or around July 27, 1988, on a Nonimmigrant Entry Permit. The permit expired on May 26, 1989.[1] On June 6, 1989, Honrado filed a labor complaint against her then employer, Universal Ventures Company, Inc. and Ed Caceres, for unpaid wages. Pursuant to a settlement agreement reached with her former employer, Honrado's return airfare to the Philippines would be paid by that employer.[2]

¶6 On September 7, 1994, Honrado was served with notice of a September 26, 1994, hearing, an order to show cause as to why she should not be deported from the CNMI, and a notice entitled "Right to Legal Representation" ("Notice"). The Notice stated: "[t]he respondent is advised that he/she has a legal right to be represented at all stages of the deportation process by an attorney of one's own choice. Counsel must be obtained at one's own expense." *Id.*

¶7 Honrado appeared at the deportation hearing without counsel. At the hearing, the trial court judge did not inquire whether Honrado understood and waived her right to counsel.

¶8 The court entered an order of immediate deportation on October 3, 1994. Honrado timely filed a notice of appeal and, on November 9, 1994, the trial court stayed the deportation order pending this appeal.

## ANALYSIS

---

[1] The Deportation order dated October 3, 1994, states that Honrado's work permit expired on August 6, 1988. This seems to be a typographical error. *See* Excerpts of R. at tab 5.

[2] *Id.* at tab 3. Declaration of George P. Camacho, Acting Director of Immigration (Sept. 2, 1994).

¶9 This Court is required to decide cases on non-constitutional grounds wherever possible. *Estate of Tudela*, 4 N.M.I. 1, 5 (1993). Therefore, we first address the statutory issue and then, if necessary, the issue of due process.

### A. Statutory Waiver Requirement

¶10 Title 3, § 4341 of the Commonwealth Code establishes the procedures required for deportation proceedings in the Commonwealth. No court of the Commonwealth has issued a published decision interpreting this statute, and no provisions of the common law, as expressed in the Restatements of the Law, are applicable. Honrado urges us to view United States Immigration and Naturalization Service ("I.N.S.") regulations as a benchmark for the statutory "*minimum level of protection* that must be afforded the alien *during the hearing.*" Br. of Appellant at 9 (emphasis in original). However, the federal and Commonwealth statutory schemes differ in key respects.

¶11 The I.N.S. regulations, which flow from the federal statutory right to counsel in immigration proceedings,[3] mandate advice to an alien of his or her right to counsel at three stages of a deportation proceeding. *See* 8 C.F.R. § 242. Section 242.1(c) requires that an alien be advised of his or her right to counsel upon the service of the order to show cause, as well as of the "availability of free legal services programs [. . .] located in the deportation district where his [or her] deportation hearing will be held." 8 C.F.R. § 242.1(c). Section 242.2(c)(2) mandates that an alien receive the same information regarding his or her rights to counsel from the officer serving an arrest warrant. Finally, § 242.16 requires that, at the hearing itself,

> [t]he Immigration Judge shall advise the respondent of his [or her] right to representation, at no expense to the Government, by counsel of his [or her] own choice authorized to practice in the proceedings and require him [or her] to state then and there whether he [or she] desires representation; advise the respondent of the availability of free legal services programs [. . .]

---

[3] That statutory right, codified at 8 U.S.C. § 1362, provides:

> In any exclusion or deportation proceedings before a special inquiry officer and in any appeal proceedings before the Attorney General from any such exclusion or deportation proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel authorized to practice in such proceedings. as he shall choose.

*Id.*

located in the district where the deportation is being held: [and] ascertain that the respondent has received a list of such programs . . .

Thus, the federal statutory right to counsel consists of a general statutory entitlement, which is supported by specific instructions for the I.N.S. to follow in serving orders to show cause, in issuing warrants, and in holding deportation hearings.

¶12 In the Commonwealth, deportation proceedings are governed by the terms of the Commonwealth Entry and Deportation Act of 1983 ("Deportation Act"). *See* 3 CMC § 4301 et seq. The Deportation Act contains two references to the right to counsel in deportation hearings. Title 3, § 4341 (c) of the Commonwealth Code, which governs service of the petition to show cause, requires that "[t]he petition shall be accompanied by a written advisement to the respondent of his [or her] right to be represented by counsel of his [or her] own choice." 3 CMC § 4341(c). Subsection (d), governing arrest procedures, requires that "[w]hen an arrest warrant is served the respondent shall have explained to him [or her] the contents of the petition to show cause, the reason of his [or her] arrest and his [or her] rights to counsel." 3 CMC § 4341(d).

¶13 However, § 4341(e), which governs procedures at the hearing itself, does *not* mention the right to counsel or require the trial judge to obtain any waiver of that right. It merely provides that,

> [a] hearing on the petition to show cause shall be before the Commonwealth Trial Court. A determination of deportability shall be made if there is clear and convincing evidence that the facts alleged as grounds for deportation are true. The court may receive in evidence any oral or written statement previously made by the respondent which is material and relevant to any issue in the case. Testimony of witnesses appearing shall be under oath or affirmation. The hearing shall be recorded pursuant to Trial Court procedure.

3 CMC § 4341(e). The Deportation Act differs from the federal statutory right in that, rather than a general entitlement implemented by three separate regulations, the Deportation Act sets forth specific procedures which correspond to only two of the federal regulations and omits the third. It is the third part of the federal scheme, omitted from the Deportation Act, which is at issue here.

¶14 The record demonstrates that Honrado received her notice along with the order to show cause,[4] thus satisfying the express terms of 3 CMC § 4341(c). Honrado was not arrested prior to the hearing; therefore, the terms of 3 CMC § 4341(d) were never triggered. Finally, there is nothing before this Court to indicate that the hearing held in the superior court deviated in any way from the procedures mandated by 3 CMC § 4341(e). Thus, the express terms of the statute were complied with in this case.

## B. Due Process Waiver Requirement

¶15 ▉▉▉ Honrado also claims a violation of her right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 5 of the Commonwealth Constitution.[5] Federal due process guarantees are applicable in the Commonwealth pursuant to Covenant § 501. COVENANT TO ESTABLISH A COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS IN POLITICAL UNION WITH THE UNITED STATES OF AMERICA § 501. Moreover, the protections of Article I, § 5 of the Commonwealth Constitution are coextensive with the due process clauses of the U.S. Constitution. *Rivera, supra,* 3 N.M.I. at 445 n.3. No Commonwealth court has issued a published decision addressing the constitutional right to counsel in deportation hearings.

¶16 Federal decisions which discuss this right typically cite the Fifth Amendment, the statutory language of 8 U.S.C. § 1362, and the I.N.S. regulations at 8 C.F.R. § 242, without delineating the precise contours of the rights and privileges flowing from each source. *See Baires v. I.N.S.,* 856 F.2d 89, 90-91 (9th Cir. 1988); *Rios-Berrios v. I.N.S.,* 776 F.2d 859, 862 (9th Cir. 1985).[6]

---

[4] *See* Excerpts of R. at tabs 2 through 4.

[5] The Fifth Amendment, applicable to federal agencies, provides that no person shall be "deprived of life, liberty, or property without due process of law." U.S. Const. amend. V, cl. 2. The Fourteenth Amendment contains a similar limitation on state action. *Id.* amend. XIV, § 1. The concept of procedural due process implies that official action must meet a minimum standard of fairness to the individual, conferring the right, for example, to adequate notice and a meaningful opportunity to be heard. Art. I, § 5 of the Commonwealth Constitution is coextensive with the due process clauses of the United States Constitution.

[6] Indeed, some of the cases in this area rely exclusively on the statutory and regulatory provisions without mentioning the constitutional protections. *See Baires, supra,* 856 F.2d at 91 ("we need not reach the constitutional issue if we find that a statutory right was violated"). However, none of these cases can be read to negate the Fifth Amendment right to counsel in deportation proceedings or the due process requirement of a

¶17 ■ However, Honrado is correct in pointing out that the basic right to counsel in deportation hearings flows independently from the Fifth and Fourteenth Amendments, as well as from the statute and regulations. (Br. of Appellant at 7 (citing *Rios-Berrios, supra*, 776 F.2d at 862)). The Ninth Circuit made clear in *Colindres-Aguilar v. I.N.S.*, 819 F.2d 259, 260 n.1 (9th Cir. 1987), that "petitioner's right to counsel is a statutory right granted by Congress under 8 U.S.C. § 1362, *and it is a right protected by the fifth amendment due process requirement of a full and fair hearing*" (emphasis added). The U.S. Supreme Court in *Bridges v. Wixon*, 326 U.S. 135, 65 S. Ct. 1443 (1945), found that an I.N.S. failure to observe rules regarding the admissibility of evidence violated the Fifth Amendment where the procedural error was central to a finding of deportability. *Id.*, 326 U.S. at 154-56, 65 S. Ct. at 1452-53. The Court held that "[m]eticulous care must be exercised lest the procedure by which [an alien] is deprived of [the ability to remain in the U.S.] not meet the essential standards of fairness." *Id.*, 326 U.S. at 154, 65 S. Ct. at 1452.

¶18 It is these "essential standards of fairness" which have been held to require that a pro se petitioner in a deportation proceeding be asked if she understands her right to counsel and wishes to waive that right. *See Reyes-Palacios v. I.N.S.*, 836 F.2d 1154, 1155 (9th Cir. 1988) ("[p]etitioner was denied due process when the INS failed to inquire whether petitioner waived his right to counsel" at a deportation hearing); *Colindres-Aguilar, supra*, 819 F.2d at 261 (analyzing claim that immigration judge failed to secure waiver at hearing as due process violation); *Handlovitz v. Adcock*, 80 F. Supp. 425, 427 (E.D. Mich. 1948) (holding that immigration judge's failure to explain right to counsel in a way alien understood did not comply "with the requirements of a fair hearing"); *In re Kosopud*, 272 F. 330, 337 (E.D. Ohio 1920) (aliens, if advised of rights to counsel at deportation hearings, are not "denied counsel in such a way as to deprive them of a fair hearing").[7]

¶19 ■ The Fifth and Fourteenth Amendment waiver requirements established by federal case law are also rooted in the historic role of the judiciary as the arbiter of procedural due process rights, even in areas where courts defer to the legislative branch on substantive matters. Thus, while the U.S. Supreme Court has consistently refused to interfere with the power of the elected branches of government to set the substantive grounds for admission and exclusion of aliens, the Court does not allow this deference on matters of *substantive* law to erode the role of the judiciary to ensure that *procedural* safeguards are respected. As the Court held in *Galvan v. Press*, 347 U.S. 522, 74 S. Ct. 737 (1954), "[p]olicies pertaining to the entry of aliens and their right to remain here are peculiarly concerned with the political conduct of government." *Id.*, 347 U.S. at 531, 74 S. Ct. at 743. However, "[i]n the enforcement of these policies, the Executive Branch of the Government must respect the procedural safeguards of due process." *Id. See Wixon, supra*, 326 U.S. at 154; *Reno v. Flores*, 507 U.S. 292, 305-06, 113 S. Ct. 1439, 1449 (1993). By the same token, this Court's deference to the Commonwealth Legislature in substantive immigration matters cannot override our duty to uphold constitutional procedural safeguards. This is especially true where our legislature has provided that the courts act as the forum in which deportation proceedings are to be held. *See* 3 CMC § 4341.

¶20 ■ In summary, even though federal I.N.S. regulations do not apply and Commonwealth statutory law is silent, the due process clauses of the Fifth and Fourteenth Amendments and Article I, § 5 of the Commonwealth Constitution require an inquiry on the record as to whether an alien appearing pro se understands and wishes to waive his or her right to counsel in a deportation proceeding. In this case, the record is clear that no inquiry occurred. Therefore, we hold that Honrado's rights to procedural due process were violated.

## C. Lack of In-Court Waiver of Right to Counsel Does Not Require Showing of Prejudice

¶21 The Ninth Circuit has consistently held that the failure to obtain a waiver of the right to counsel of choice at deportation proceedings, accompanied by prejudice to the alien, requires remand.[8] However, the Ninth Circuit has yet to determine in a direct appeal case whether there must be a showing of prejudice where the defendant was not apprised of the right to counsel on the record at the

---

valid waiver of that right when an alien appears pro se.

[7] By a contrary reading of these cases, the Due Process Clauses would only guarantee and enforce the federal statutory right to counsel, which, as discussed above, does not apply in the Commonwealth. However, such a reading would make unnecessary these cases' reliance on the Due Process Clauses. If the federal right to counsel were only statutory, there would be no need to call upon the Fifth and Fourteenth Amendments to enforce it. Moreover, such a reading of federal precedents, as applied to this case, would result in a lesser standard of constitutional due process protection in the Commonwealth than is guaranteed under the U.S. Constitution. Section 501 of the Covenant and Art. I § 5 of the Commonwealth Constitution provide due process protections coextensive with the due process

clauses of the U.S. Constitution.

[8] *See Baires, supra*, 856 F.2d at 91; *Colindres-Aguilar, supra*, 819 F.2d at 261: *Rios-Berrios, supra*, 776 F.2d at 863; *Castro-O'Ryan v. I.N.S.*, 847 F.2d 1307, 1312-13 (9th Cir. 1988).

deportation hearing.[9]

¶22 ■ The Seventh Circuit has held that the failure of an administrative judge to obtain a waiver at deportation hearings, requires vacation of a deportation order even without a showing of prejudice. Specifically, in *Snajder v. I.N.S.*, 29 F.3d 1203 (7th Cir. 1994), on facts substantially analogous to those here, the court held that the right to be represented by counsel in deportation proceedings "is too important and fundamental a right to be circumscribed by a harmless error rule . . . [t]he circumstances . . . call for the prophylactic remedy of vacating the order of deportation and for writing thereafter on a clean slate." *Id.* at 1207.[10] We find this reasoning most appropriate to the facts presented here.

¶23 We hold that pursuant to Article I, § 5 of the Commonwealth Constitution, due process mandates that a respondent in a deportation hearing be advised of his or her right to counsel. Here, the trial court should have made at least a brief inquiry as to whether Honrado wished to have representation at her own expense before proceeding with the deportation hearing.

## CONCLUSION

¶24 Based on the foregoing, we **VACATE** the Superior Court's deportation order and remand for further proceedings consistent with this opinion.

———

VILLAGOMEZ, Justice, dissenting:

¶25 An order of the Division of Labor dated March 20, 1990, gave Honrado until March 22, 1990, to apply for a transfer of employment; otherwise, she was to return to the Philippines. The record does not indicate that she ever applied for a transfer, and she never left the CNMI.

¶26 At Honrado's deportation hearing, the trial judge did not inform her of her right to be represented by counsel of her choice. Honrado did not deny that she was deportable. There was no issue of fact as to her deportability. After the judge found her deportable and ordered her deportation, Honrado appealed to this Court. She contends that she has a right to be informed by the trial court of her right to an attorney and, because the trial court did not advise her of that right, the trial court's deportation order should be reversed.

¶27 The majority's analysis, *ante*, reviews the law of the CNMI and concludes that, under the applicable statutes, the trial court had no duty to inform Honrado of her right to counsel. I agree with this conclusion.

¶28 The analysis, *ante*, also reviews the U.S. immigration statutes and regulations and notes that, under federal immigration regulations, a respondent is entitled to be informed by an immigration judge in a deportation hearing that she has a right to be represented by counsel of her choice without any expense to the government. The analysis further notes that the federal immigration regulations do not apply in the CNMI; consequently, the right under federal regulation to be advised of a right to counsel does not extend to deportation respondents in the courts of the CNMI. I also agree with this conclusion.

¶29 The analysis next reviews federal deportation cases and concludes from those cases that, under Amendments Five and Fourteen of the U.S. Constitution and under Article I, § 5 of the CNMI Constitution, Honrado has the right to be informed by the trial court that she has the right to counsel. Here is where I have a different opinion.

¶30 Reliance on court rulings set forth in federal deportation cases is unwarranted for several reasons. First, as mentioned above, the immigration laws of the United States, with limited exceptions not relevant here, do not apply in the CNMI. COVENANT TO ESTABLISH A COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS IN POLITICAL UNION WITH THE UNITED STATES OF AMERICA §§ 503(a), 506. With respect to CNMI immigration matters, the CNMI is sovereign and this Court is duty-bound to apply only the immigration laws of the CNMI. Title 8, § 1362 of the United States Code provides that in a deportation proceeding, the respondent "shall have the privilege of being represented (at no expense to the government) by such counsel authorized to practice in

———

[9] *Rios-Berrios, supra*, 776 F.2d at 863. This is disting-uishable from *Cerda-Pena, supra*, 799 F.2d 1374, where the court found that a collateral attack of a deportation order based on a violation of due process required a showing of prejudice. In *Cerda-Pena*, the appellant appealed his conviction for illegally re-entering the United States under 8 U.S.C. § 1326. Under § 1326, an alien may not be convicted for illegally re-entering the U.S. unless he or she has previously been lawfully deported. Appellant was deported and that deportation was the basis for the indictment charging appellant with violating § 1326. The court held that an alien who wished to challenge the legality of a previous deportation order bore the initial burden of producing evidence indicating that a violation of an INS regulation that occurred during the alien's deportation prejudiced his or her interests protected by the regulation in such a manner as to actually have the potential for affecting the outcome of the proceedings. Once such a showing of prejudice was made, then the burden shifted to the government to show that the violation could not have changed the outcome of the deportation proceeding. *Id.* at 1379. However, the Court stated that it "expresse[d] no opinion as to whether a lesser showing of prejudice should be required on a direct appeal of a deportation decision as opposed to a collateral attack of a previous deportation." *Id.* at 1379, n.8. In addition in *Cerda-Pena*, since the defendant had a hearing below, he had the opportunity to introduce evidence of prejudice. However, in a direct appeal as we have here, there is limited opportunity to show prejudice based on the record.

[10] *See Castaneda-Delgado v. I.N.S.*, 525 F.2d 1295 (7th Cir. 1975); *Batanic v. I.N.S.*, 12 F.3d 662, (7th Cir. 1993).

such proceedings, as he shall choose." 8 U.S.C. § 1362. Title 8, § 242.14 of the Code of Federal Regulations specifically requires an immigration judge to advise a respondent at a deportation hearing of his or her right to representation by counsel. No such requirement is found in the statutes or regulations of the CNMI. Therefore, no such requirement binds Commonwealth trial judges.

¶31 Second, none of the federal cases hold that the federal Constitution, in and of itself, without the federal statutes and regulations, requires an immigration judge to inform a respondent in a deportation hearing that he or she has a right to be represented by counsel of his or her choice. The federal cases discuss "due process" in the context of a very specific regulatory framework which requires immigration judges to give respondents notice of their right to counsel at deportation hearings. No federal court has ruled in a published opinion, that absent such a regulation, the Constitution itself would require, as a matter of due process, that an immigration judge inform a respondent of his or her right to counsel.

¶32 In regard to the federal cases cited *ante*, a statement is made that "none of these cases can be read to negate the Fifth Amendment right to counsel in deportation proceedings or the due process requirement of a valid waiver of that right when an alien appears pro se." *Ante* at n.6. The question, however, is not whether federal cases negate the requirement of a valid waiver. Rather, the question is whether these cases declare that the U.S. Constitution, standing alone, requires a valid waiver of the right to counsel when an alien appears pro se at a deportation hearing. The cases state no such rule. For instance, *Colindres-Aguilar v. I.N.S.*, 819 F.2d 259 (9th Cir. 1987), is quoted *ante* as stating that "the petitioner's right to counsel is a statutory right granted by Congress under 8 U.S.C. § 1362, and it is a right protected by the fifth amendment due process requirement of a full and fair hearing." *Id.* at 260 n.1. This holding says that the right to counsel is a *statutory right granted by Congress* which, once granted, is protected as a matter of constitutional due process. The Ninth Circuit does not say that the right in question originates from the Constitution.

¶33 The federal courts have ruled that due process is denied when an immigration judge fails to inquire whether a petitioner waived his or her right to counsel, because such a right is expressly granted by federal regulation, not because it is granted by the federal Constitution. The CNMI Legislature may enact laws giving a deportation respondent the right to be informed by the judge at a deportation hearing of his or her right to counsel, just as the federal government did. Until our legislature does so, however, the trial judge is not required to give such notice.

¶34 Such a notice requirement is not necessary, as a matter of constitutional law, to insure that the "essential standards of fairness" and "fair hearing" principles are met. Even if the U.S. Constitution did require this type of

notice, a trial judge's failure to give the notice should be subject to the harmless error rule.

¶35 Here, Honrado was not prejudiced by the absence of notice, at the hearing, of her right to be represented by counsel. The record on appeal shows that she received a full and fair hearing. She received a written notice advising her of her right to be represented by an attorney of her own choice, at her own expense, at all stages of the deportation process. She appeared at the hearing and conversed at length with the judge, explaining her situation; her previous case at the Labor Office; her attempts to find other employment; and that she was last employed as a warehouse manager. She opened the hearing by saying, "Good afternoon, your Honor," before the judge had even recognized the parties.[11] While she did not deny being deportable, she went on at length in English, begging the court's consideration and stating, "I admit it," "I made a mistake."[12] The record further shows that this was not Honrado's first appearance before a Commonwealth tribunal. She had obtained counsel to represent her in an earlier labor dispute with her then employer, Universal Ventures Company.

¶36 In summary, the record indicates that Honrado knew that she was deportable, knew her right to an attorney, and made sure that she was heard by the judge. Therefore, the fact that the judge did not inform her of her right to counsel did not prejudice her.

¶37 The statement of facts mentions that Honrado lives with her husband, and four children who are all under six years of age. The children are U.S. citizens. As human beings, we may feel empathy for Honrado, her husband, and her young children. However, as Justices, it is our duty to apply the law even if the results are sometimes harsh.

¶38 The record on appeal shows that Honrado's work permit expired on May 26, 1989. It also shows that the labor office, by order dated March 20, 1990, told respondent that if she did not transfer her employment by March 22, 1990, she was to return to her point of hire. She did not transfer within the allotted time and did not return to the Philippines, her point of hire. Instead, she remained in the Commonwealth and has lived here as an illegal alien for the past six years. Had she departed from the CNMI voluntarily or had the government made sure that she had departed at the required time, she would not find herself in her current predicament.

¶39 CNMI immigration laws do not allow non-resident workers to become permanent Commonwealth residents or naturalized U.S. citizens. To require such workers to leave the CNMI after many years may seem unfair to the

---

[11] Excerpts of R. at 2.

[12] *Id.* at 11-12.

13

non-resident workers, and it makes the CNMI appear insensitive to human predicaments. For this reason it is important that non-resident workers return to their places of hire upon the expiration of their employment contracts or when their services are no longer needed, or upon the just and speedy resolution of any labor dispute that may have arisen. The longer that non-resident workers remain in the CNMI, the more detached they become from their homelands or places of hire and the more permanent their roots become in the CNMI.

¶40 The trial judge here was faced with an emotional plea. Nevertheless, the judge had a duty to, and did, apply the law. Honrado, while crying before the court, pleaded for consideration and permission to stay longer. The relevant dialogue between the judge and Honrado follows:

> MS. ESTRADA: . . . [crying sounds]. Sir, ah -- sir, I cannot go without my four kids, sir. My kids are very small. The youngest only two this -- this -- today because they were having their birthday today, my twin.
> THE COURT: Uh-huh?
> MS. ESTRADA: Sir, if you're going to deport me, what will happen to them? . . .[crying sounds]. And, I -- and, besides -- [crying sounds]. Sir, I cannot say anything, sir, I don't wanna go without my kids. [13]
> ******
> THE COURT: What -- what do you -- what are you specifically asking this court, in terms of consideration.
> MS. ESTRADA: Like, for example, just give me time to prepare, to prepare for -- for deportation, including all the affairs of my baby. [14]
>
> ***
>
> THE COURT: How -- how long do you need?
> MS. ESTRADA: I don't know, sir, as long as I can ah, collect all the needed amount for me to have a new life in Philippines. ... [crying sounds]. It's very hard to live, sir, now -- nowadays in Philippines is very hard. I got four kids. If I bring them in Philippines, I don't where -- where I'm going to -- to get some money to, you know, support them. And, besides my husband is just working ah, you know, just a simple ah, contract worker, just ah, paying for 2.45 per hour. So ...[crying sounds].
> THE COURT: Well, I'd like to give due consideration to everyone that comes before this court, but in your case, I have no choice but to issue

a decision after finding that you are deportable. And, that's all I can do. [15]

¶41 This must have been a very difficult moment for the judge. This Court similarly does not find it easy to apply the law when such application results in human trauma, especially where children are involved. But we are the judiciary, not the legislature; we must apply the law as it is and, as the trial judge said, "that's all I can do."

¶42 For the above reasons, I would affirm the trial court's order of deportation.