**CARNATION COMPANY, Petitioner,**

v.

**SECRETARY OF LABOR, and Occupational Safety and Health Review Commission, Respondents.**

No. 78–2894.

United States Court of Appeals, Ninth Circuit.

Argued July 10, 1979.

Submitted Sept. 19, 1980.

Decided April 9, 1981.

---

**802**

Merele Wood, II, Los Angeles, Cal., for petitioner.

Lorelei J. Borland, Washington, D.C., for respondents.

Before GOODWIN and TANG, Circuit Judges, and LYDICK,* District Judge.

PER CURIAM.

In this enforcement proceeding, Carnation petitions to review the validity of an agency finding that Carnation committed a nonserious violation of 29 U.S.C. § 654(a)(2), by failing to comply with the Secretary's occupational noise standard, 29 C.F.R. 1910.95.[1]

Carnation manufactures metal cans in its Waupun, Wisconsin facility. An industrial hygienist with the Occupational Safety and Health Administration (OSHA) conducted an inspection of the Waupun facility. At three random locations in the press room of the plant the inspector found readings indicating that the machines subjected the employees to sound levels in excess of the

---

\* The Honorable Lawrence T. Lydick, United States District Judge for the Central District of California, sitting by designation.

1. 29 C.F.R. 1910.95 provides in part:
    "(a) Protection against the effects of noise exposure shall be provided when the sound levels exceed those shown in Table G–16
    . . . .
    "(b)(1) When employees are subjected to sound exceeding those listed in Table G–16, feasible administrative or engineering con-

trols shall be utilized. If such controls fail to reduce sound levels within the levels of Table G- 16, personal protective equipment shall be provided and used to reduce sound levels within the levels of the table.

    .    .    .    .    .
    "(3) In all cases where the sound levels exceed the values shown herein, a continuing, effective hearing conservation program shall be administered."

standard's allowable limits. Carnation was then using, and desires to continue to rely upon, individual protective gear.

Carnation admits that the three machines in its Waupun plant produce noise in excess of the maximum allowable by the standard. Indeed, it is undisputed that the noise level is excessive throughout the entire plant. Carnation nonetheless argues two main reasons why it should not be found in violation of § 1910.95.

First, Carnation asserts that by presenting evidence regarding the economic feasibility of lowering the sound levels only for three machines, the Secretary has, in violation of due process, improperly limited his burden of proof. (A "cost-benefit" analysis for feasible engineering controls on the three randomly selected sites will distort the facts that a "cost-benefit" analysis of feasible engineering controls for the entire plant would reveal.)

Second, Carnation characterizes the random selection of machines as a denial of due process because (a) the agency did not follow the regulations set forth in the Field Operations Manual issued by the Occupational Safety and Health Administration in May, 1974 [hereinafter "FOM"], and (b) random selection is arbitrary and capricious.

I. *The Limitations Placed on the Secretary's Burden of Proof as to the Economic Feasibility of His Proposed Engineering Noise Controls.*

■ Violators of the noise standard must correct violations if to do so is economically feasible. 29 C.F.R. 1910.95. The Secretary has the burden of proof of showing economic feasibility. 29 C.F.R. 2200.73. The question here is what precisely is the Secretary's burden of proof. Is it enough for the Secretary to show that his proposed noise controls are economically feasible for installation in the discrete locations he cites; or must he show that his proposed controls are economically feasible if installed plant-wide to correct all noise violations?

The regulations and the legislative history of the Act provide no guidance. Common sense, however, does. It would be a waste of government money and energy to compel the Secretary to prove the economic feasibility of plant-wide controls where there is no suggestion by the violator that such controls would be economically infeasible. Carnation cites no precedent mandating the conclusion it seeks. The matter would be entirely different if a violator were able to show that the controls installed at discrete locations, while economically feasible, would not be economically feasible were they installed throughout the plant. The latter case would be impermissible because the Secretary could carry his burden ·and prove economic feasibility under 19 C.F.R. 1910.95 by piecemeal proof in situations where he would not be able to prove economic feasibility had he required the violator at the outset to remedy all the violations in the plant.

■ Procedural due process requires that a party against whom an agency has proceeded be allowed to rebut evidence offered by the agency if that evidence is relevant. *See Golden Grain Macaroni Company v. F. T. C.*, 472 F.2d 882, 886 (9th Cir. 1972), *cert. denied*, 412 U.S. 918, 93 S.Ct. 2730, 37 L.Ed.2d 144 (1973). In this case, the Commission refused to consider Carnation's evidence concerning the economic feasibility of plant-wide controls despite Carnation's allegation that the discrete controls required by OSHA would not be economically feasible if installed plant-wide to remedy all violations. The failure to permit Carnation to rebut the Secretary's evidence of economic feasibility was therefore a denial of due process.

■ On remand, Carnation will have the burden of establishing that a piecemeal approach to economic feasibility will produce significantly different results than a plant-wide approach. If Carnation meets this burden, the Secretary's burden under 29 C.F.R. § 1910.95 will be to prove that his proposed noise controls are economically feasible for the entire plant.

II. *The Secretary's Method of Citation.*

■ Carnation contends that the FOM regulations required the agency to inspect

the entire plant for noise violations rather than to pick three random sites.[2] It then argues that OSHA's failure to follow its own regulations denied Carnation due process. Carnation relies on several cases including *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed.2d 681 (1954); and *United States v. Heffner,* 420 F.2d 809 (4th Cir. 1969).

We do not find this argument persuasive. The *Accardi* doctrine is not a constitutional one. *See, United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 743 (1979); *United States v. Calderon-Medina,* 591 F.2d 529 (9th Cir. 1979), *later app., United States v. Rangel-Gonzales,* 617 F.2d 529 (9th Cir. 1980) (quoting from *Mendez v. Immigration & Natur. Service,* 563 F.2d 956 (9th Cir. 1977)); *see also, United States v. Sourapas,* 515 F.2d 295, 300 (9th Cir. 1975)

(noting that a suppression order for violation of IRS' regulations was a harsh weapon to use in the exercise of supervisory powers). Because the doctrine is not a constitutional one, we can overrule the Secretary only by exercising our supervisory powers.[3]

We decline to exercise our supervisory powers in this case for several reasons. First, it is not entirely clear that the regulations have the meaning which Carnation attributes to them. The language does not give a clear mandate; and logic suggests that they cannot mean what Carnation says they mean—*all* violations must be located and cited or the suit is dismissed. The second reason why we decline to exercise our supervisory powers is that the deviation, if any, from the regulations was not prejudicial.[4]

2. Carnation cites the following three passages from the FOM to support its position that OSHA had to inspect the entire plant for violations:

"The CSHO shall take the time necessary to inspect all aspects of the operations at the establishment being inspected. The time involved may vary, from one hour to more than a day, depending upon the size of the establishment and the complexity of its operations." Chapter V–F2a.

"The description of the alleged violation of a standard should fully state the observed condition or practice which does not comply with the requirement of the standard. Such description should be specific in stating the area where the condition or practice was observed as well as all pertinent factual details of the alleged violation. In situations where *multiple violations of the same standard* are found the location and description of each instance shall be specifically listed..." Chapter X–A2.b(1)

"The CSHO must make every effort to *specifically locate and identify* every incident of each violation at the time of inspection so that later it can be determined whether that violating condition constitutes a failure to abate or a repeated violation." Chapter VIII–B5.F

3. *United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 743 (1979) reversed the suppression of evidence obtained in violation of IRS' own regulations. The appellate court had declined to rule that " 'agencies always violate due process when they fail to adhere to their procedures' " or that "a deviation from general guidelines governing Executive exercises of dis-

cretion will result in automatic exclusion of evidence." Instead, it said that the noncompliance by IRS harmed more than the " 'efficiency of the IRS operations.' " *United States v. Caceres,* 545 F.2d 1182, 1187 (9th Cir. 1976), *rev'd,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 743 (1979).

It might be argued that the Supreme Court opinion prohibits the court's use of supervisory powers to exclude evidence obtained in violation of agency regulations. We do not read the opinion so narrowly. The Supreme Court said "the Court of Appeals agreed with the District Court both that the IRS regulations had not been followed and that exclusion of the recordings was *therefore required.* It is the latter conclusion that is at issue here." (Emphasis added.) *United States v. Caceres, supra,* 440 U.S. at 743, 99 S.Ct. at 1467. The Supreme Court specifically declined to evaluate the government's argument that the court of appeals' discretionary powers did not extend to suppression of evidence obtained in violation of the agency regulations. *Id.* at 755, 99 S.Ct. at 1473.

4. Although there is little discussion of when the *Accardi* supervisory powers should be invoked, courts have indicated that the standard is whether violation of the regulation prejudiced the party involved. *See United States v. Hernandez-Rojas,* 617 F.2d 533, 535 (9th Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 170, 66 L.Ed.2d 81 (1980) (INS' failure to follow regulations requiring advising an arrested alien of his right to speak to his consul was not prejudicial and thus not a ground for challenging the conviction); *see also United States v. Caceres,* 440

Carnation would be prejudiced by the Secretary's random citations if the Secretary could, by those citations, force Carnation to remodel the plant piecemeal to remedy violations that Carnation would not have had to remedy because of economic infeasibility had the Secretary at the outset cited all the violations in the entire plant. Under our interpretation of the regulations discussed in the previous section, however, the Secretary cannot force Carnation into such a situation. The Secretary cannot limit his burden of proof as to economic feasibility to three locations without permitting Carnation the opportunity to convince the court that a piecemeal approach differs significantly from a plant-wide approach. Therefore, Carnation is not prejudiced by the Secretary's failure to cite all violations.

We reject as frivolous Carnation's argument that random inspection is by definition arbitrary and capricious and thus violates due process. It goes without saying that the government does not have the resources to find every violation of every health and safety law. Scarcity of resources does not and cannot mean, however, that some of the laws cannot be enforced. A random selection method insures more fairness than some other methods that could be devised.

Enforcement of the order is denied. The cause is remanded to the Commission to permit Carnation to introduce evidence that a piecemeal approach to economic feasibility will produce significantly different results than a plant-wide approach.

U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 743 (1979) (held, due process clause not implicated because appellants had not suffered substantially as a result of reasonable reliance on agency regulations, and that even if a case-by-case approach is used, this was not the case where the court should have exercised its discretion to suppress evidence); *see generally* Note, *Violations by Agencies of Their Own Regulations*, 87 Harv.L.Rev. 629, 634 (1974) (violations of procedural regulations should be upheld if there is no significant possibility that the violation affected the ultimate outcome of the agency's action). This seems like a reasonable approach and we adopt it here.