**Vallabhbhai Kanji PATEL, and Ramanlal Maganlal Naik, Petitioners,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 85–7451.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1986.

Decided May 29, 1986.

Kip Steinberg, Simmons & Ungar, San Francisco, Cal., for petitioners.

David J. Kline, Donald Keener, Civil Div., Dept. of Justice, Washington, D.C., for respondent.

Before SNEED, ANDERSON, and POOLE, Circuit Judges.

SNEED, Circuit Judge.

Vallabhbhai Kanji Patel and Ramanlal Maganlal Naik (the petitioners) seek review of a decision of the Board of Immigration Appeals (BIA) denying their petition for adjustment of status. We deny the petition for review.

I.

FACTS

The petitioners, citizens of Great Britain, entered this country on January 11, 1976. They formed a corporation, Hotel Sombrero, Inc., through which they invested a substantial amount of money in a hotel in Las Vegas, Nevada. Relying on this investment, they filed an application with the

INS on April 23, 1976, for adjustment of status to permanent residents as nonpreference investors. On June 6, 1976, the petitioners returned to Zambia, their former residence.

The INS scheduled interviews on the adjustment of status applications in August 1977. Because the petitioners were out of the country at that time, the INS classified the application as abandoned, *see* 8 C.F.R. § 245.2(a)(3) (1986). Although an internal INS Operating Instruction requires that the INS notify applicants of such an action, *see* INS O.I. 245.6c(2), the INS failed to give the petitioners formal notice.

The petitioners returned to this country on January 5, 1983. After they had overstayed their visas, the INS instituted deportation proceedings. The petitioners requested adjustment of status based on Section 19 of the Immigration and Nationality Act Amendments of 1981, Pub.L. No. 97–116, § 19, 95 Stat. 1611, 1621 [hereinafter referred to as section 19]. The immigration judge held that they were not eligible for such relief because they were out of this country on June 1, 1978. The BIA affirmed. The petitioners filed a petition for review in this court, arguing, first, that the BIA misinterpreted section 19 and, second, that the INS's failure to give formal notice of its termination of their adjustment of status application violated due process. We have jurisdiction under section 106(a) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a) (1982).

## II.

### ANALYSIS

A. *Denial of the Application for Adjustment of Status*

We must affirm the BIA's denial of the petitioners' application for adjustment of status if its interpretation is "permissible." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *see Sudomir v. McMahon,* 767 F.2d 1456, 1459 (9th Cir.1985).

There is no dispute concerning the general intent of Congress in enacting section 19. The Immigration and Nationality Act established an annual limitation on the number of immigrants admitted into this country, with exceptions for certain classes of persons such as refugees. That Act also established six preferences—or priorities—within this quota. Immigrant visas are allocated to the preference classes by numerical order of priority. Any portion of the quota that the six preference classes do not use is allocated on a first-come first-serve basis to qualified "nonpreference" immigrants. The petitioners fall into this class.

Before 1978, the six preference groups did not fully use their quotas, leaving visas available for nonpreference immigrants. In 1978, however, the method of calculating the quotas was changed; since that time, nonpreference visas have not been available. Unfortunately, like the petitioners in this case, many people invested money in businesses in this country on the assumption that, after a few years, they could obtain nonpreference visas. Congress felt that the change in the quota system unfairly left these people with no hope of getting into this country. Accordingly, it included section 19 in the Immigration and Nationality Act Amendments of 1981, Pub.L. No. 97–116, 95 Stat. 1611, 1621. That section provides that "[t]he numerical limitations ... of the Immigration and Nationality Act shall not apply to any alien who is present in the United States" and who qualified as a nonpreference investor on or before June 1, 1978, and had applied for adjustment of status. *Id.*

The issue is how to interpret the phrase "any alien who is present in the United States." The petitioners contend that they clearly come within the meaning of the phrase because they are now in this country. The INS contends that this language restricts relief to aliens present in the country on December 29, 1981—the date the statute was enacted. We think the INS's construction is permissible.

Before the statute was passed, the Department of State suggested that section 19 be expanded to apply to aliens outside of the United States. *See* Letter from J. Brian Atwood, Assistant Secretary for Congressional Relations, Department of State, to Hon. Peter W. Rodino, Chairman, Committee on the Judiciary (June 26, 1980), *reprinted in* H.R.Rep. No. 1301, 96th Cong., 2d Sess. at 54–55.

The sponsor of section 19 disagreed. He responded: "My thought was that if you can't get the whole apple, you at least could get a piece of it, and the equity is stronger for those who would make the journey here and *were found here....*" *INS Efficiency Legislation: Hearing on H.R. 2043 Before the Subcomm. on Immigration, Refugees, and International Law of the House Comm. on the Judiciary,* 97th Cong., 1st Sess. 59 (1981) (comments of Rep. Dan Lungren) (emphasis added).

The petitioners argue that the phrase demonstrates an intent to exclude only those who applied abroad for visas without ever coming to this country. Although that construction would limit the reach of the Atwood letter, Representative Lungren's comments clearly support the construction of the INS. He noted that he thought greater equity existed for those aliens who "make the journey here and were found here." *Id.* We think this is sufficient evidence that Congress intended the section to apply only to those aliens found in the country on the date of enactment. We simply cannot say that the construction adopted by the INS is impermissible.

B. *Due Process*

■ Finally, the petitioners contend that the INS's failure to give them notice in accordance with its regulations mandates reversal of the INS's determination that they abandoned their application for adjustment of status. Although we have recognized that an agency's violation of its own regulations [1] is subject to judicial review, we have not been consistent as to the source of this doctrine. *See, e.g., Carnation Co. v. Secretary of Labor,* 641 F.2d 801, 804–05 (9th Cir.1981) (per curiam) (describing this as a portion of the supervisory powers); *United States v. Calderon-Medina,* 591 F.2d 529, 531 (9th Cir.1979) (describing this as a rule of administrative law).[2] In certain circumstances, such a violation might even violate procedural due process. Whatever the source of the rule, however, the claimant must show that he was prejudiced by the agency's mistake. *See United States v. Caceres,* 440 U.S. 741, 752–53, 99 S.Ct. 1465, 1471–72, 59 L.Ed.2d 733 (1979); *Carnation,* 641 F.2d at 804–05; *Calderon-Medina,* 591 F.2d at 531.

The internal rule in question provides that "[t]he applicant shall be notified by letter of the termination of his application and the reason therefor." INS O.I. 245.-6c(2) (n.d.) (unpublished). The petitioners argue that, had they received notice, they could have overturned the INS's determination that they had abandoned their application. Specifically, they claim that they fell within one of the exceptions to the "abandonment" regulation, which prevents penalization of the alien when the departure is "innocent and casual," and results in only a "brief" absence. 8 C.F.R. § 245.2(a)(3) (1986).[3]

This contention is meritless. The petitioners left this country in June 1976. Their application was deemed abandoned

---

1. We note that the regulation in this case was required by neither the Constitution nor congressional enactment. Accordingly, the strict rules of cases like *Bridges v. Wixon,* 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945), are inapplicable. *See* Raven-Hansen, *Regulatory Estoppel: When Agencies Break Their Own "Laws,"* 64 Texas L.Rev. 1, 12–18 (1985).

2. For a lengthy treatment of this doctrine and its sources see Raven-Hansen, *supra* note 1.

3. If the INS had reinstated their application, their priority date probably would have allowed them to enter the country before the availability of nonpreference immigrant visas ended in 1978. We need not address the rest of their chain of argument because they fail at the beginning.

fourteen months later, in August 1977. Even if they had received prompt notice, the determination of abandonment would not have been changed; the petitioners' fourteen-month absence was clearly not brief. Because the petitioners can demonstrate no prejudice, we reject their due process claim.

### III.

### CONCLUSION

The BIA's construction of section 19 is permissible. The INS's failure to give notice did not prejudice the petitioners. Accordingly, the petition for review is denied.

DENIED.