# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SHWETA KOHLI,

Petitioner,

v.

ALBERTO R. GONZALES, Attorney General,

Respondent.

No. 05-72761

Agency No.
A79-610-568

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted December 8, 2006*
San Francisco, California

Filed January 17, 2007

Before: Thomas G. Nelson, Ronald M. Gould, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Alan M. Kaufman of San Francisco, California, for petitioner Shweta Kohli.

Peter D. Keisler, Assistant Attorney General, John C. Cunningham, and Gregg M. Schwind of Washington, D.C., for respondent Alberto R. Gonzales, Attorney General.

## OPINION

CALLAHAN, Circuit Judge:

Shweta Kohli, a native of Kuwait and a citizen of India, seeks relief from removal arguing that the proceedings before the Immigration Court should have been terminated because the name and title of the issuing officer were not legible on the Notice to Appear ("NTA"). She also contends that she is entitled to withholding of removal and to relief under the Convention Against Torture ("CAT"). We determine that the alleged defect in the Notice to Appear is not jurisdictional. We also conclude that the Immigration Judge's adverse credibility determination is supported by substantial evidence and that Kohli has not shown that she is entitled to either withholding of removal or relief under the CAT.

### I. Background

Kohli was born in Kuwait on October 13, 1980, of Indian parents and is a citizen of India. Her parents were contract workers in Kuwait and in 1990, during the Gulf War, the family moved back to India. In 1992, her parents returned to Kuwait, but Kohli remained in India with her grandmother to finish her schooling.

Kohli testified that in 1996 while in school she became a member of a human rights association which was interested in human rights and particularly opposed the practices of sati[1]

---

[1]The New Oxford American Dictionary 1712 (2003) defines sati as "the former Hindu practice of a widow immolating herself on her husband's funeral pyre."

and dowry. Kohli attended meetings and made fliers. About five months after she joined the association, she attended a small rally of eight to ten people. The police came and told them to stop and took down their school identification numbers, names and addresses. Kohli and her associates then dispersed.

A month and a half later Kohli attended a bigger rally near a supermarket with about fifteen members of the association. They handed out flyers to about ten women. Again the police came and told them to stop. Their leader said that they were not doing anything wrong. The police, however, put the fifteen participants in their vehicles and took them to the police station. At the police station the participants were kept together in a waiting room and questioned separately. When questioned, Kohli said she joined the association to bring awareness to women about sati and dowry. She testified that the police officer told her that these were cultural practices and should not be changed. Kohli also testified that when she was taken into the room for questioning, "when he took me instead of telling me to sit down he actually took my shoulders and told me to sit down, pushed me down on the chair." Kohli was released after a couple of hours and called her grandmother who then came and picked her up.

Her grandmother was upset, called Kohli's parents in Kuwait, and suggested that they should take Kohli back to Kuwait. Kohli explained that it was a really bad thing for an Indian girl at the age of sixteen to be detained by the police. Her parents talked to her on the phone and told her to come back to Kuwait, but Kohli said she was happy in India.

Some time after this, Kohli and other members of the association were in a park drawing flyers and planning for the next rally. A single police officer approached the group. The group leader explained that they were not doing a rally, just planning for a future rally, and the police officer left.

Kohli testified that the police officer must have called her grandmother because her grandmother told her that if she did not stop going to the meetings, her parents would take her back to Kuwait. A week later Kohli's father came and took her back to Kuwait.

Kohli remained in Kuwait for nine months and then returned to India for a month to put her affairs in order and for a vacation. While in India, Kohli did not attend rallies, but continued to do work for the association. She then returned to Kuwait, stayed a month and a half, and then came to the United States.

Kohli entered the United States in 1997 as a visitor, intending to stay a month, but then decided to remain and attend school. She graduated from high school in 1999. In February 2001, Kohli married a Pakistani citizen who had previously been granted asylum in the United States. Kohli applied for asylum in December 2001. In February 2002, the application was rejected because she had not sought asylum within a year of her arrival in the United States and had not demonstrated that the delay was caused by extraordinary circumstances. Kohli was served with a NTA charging her with being removable for remaining in the United States without authorization.

At her removal hearing, the Immigration Judge ("IJ") determined that Kohli's asylum application was time-barred because it was submitted late and there were no exceptional circumstances to justify the delay. Addressing the merits of her requests for relief, the IJ concluded that Kohli's testimony was not credible and denied her application for asylum, withholding of removal, and relief under the CAT. The IJ further noted, in the alternative, that even if Kohli was credible, the police conduct she encountered did not rise to the level of persecution.

The IJ based his determination on discrepancies between Kohli's declaration, her testimony, and the letter she submit-

ted to verify her membership in the association. The IJ noted that Kohli testified that all of her activities took place in New Dehli, but the letter stated that she joined the association "in Punjab" and that Kohli's declaration stated that "while in Chandigarth" she "took active part in protests against the discriminatory laws of TADA, that is the Indian anti-terrorist act, that was designed to crush political activities from the Punjab." He further noted that Kohli testified that she had only been kept in the police station for a couple of hours, but her declaration stated that she "was kept at the police station over night and physically abused, degraded without committing any crime." Also, while Kohli testified to a single visit to a police station, her declaration stated that she was taken to the police station several times.

In the course of the proceedings before the IJ, Kohli moved to terminate the proceedings because the signature and title of the issuing officer on the Form I-862 NTA were illegible. The IJ denied the motion to terminate noting that (1) neither the statute nor the regulation requires that the title of the issuing officer be included on the NTA, (2) the argument was waived by Kohli's admission to the allegations in the NTA and concession of removability, (3) Kohli had not been prejudiced by not knowing the identity of the issuing officer, and (4) because there was no indication that the NTA was improperly issued, the presumption of regularity attached.

Kohli appealed to the BIA. The BIA agreed with the IJ that Kohli had not demonstrated eligibility for asylum, had failed to establish grounds for granting other forms of relief, and otherwise affirmed the IJ's decision based on the reasons set forth therein, without further elaboration.

Kohli filed a timely petition for review with this court.

## II.   The alleged defect in the Notice to Appear was not jurisdictional

### A.   *Petitioner's contentions*

Kohli argues that jurisdiction in a removal proceeding vests when a NTA is filed with the Immigration Court. 8 C.F.R. § 1003.14. She contends that the contents of a NTA are carefully prescribed in 8 U.S.C. § 1229(a)(1),[2] citing *Matter of G-Y-R*, 23 I. & N. Dec. 181 (BIA 2001). Kohli asserts that 8 C.F.R. § 299.1 directs that the NTA must use Form I-862, and that the form "requires the signature and title of the issuing immigration officer." Kohli claims that the party asserting jurisdiction has the burden of proving all jurisdictional facts.

She then addresses the four reasons offered by the IJ for denying her motion to terminate proceedings. In response to the IJ's observation that 8 U.S.C. § 1229(a)(1)(B) does not require that the NTA indicate the title of the issuing officer, Kohli asserts:

> The defect upon which the motion is based is not the failure to indicate the title of the issuing officer, per se. But rather, since the signature on the NTA is illegible and the name and title of the official are not indicated, the IJ is in no position to determine whether he in fact has jurisdiction.

Second, Kohli denies that she waived the issue, arguing that a challenge to jurisdiction cannot be waived, citing *Cardenas-Uriate v. INS*, 227 F.3d 1132 (9th Cir. 2000), and *Olivera-Garcia v. INS*, 328 F.3d 1083 (9th Cir. 2003). Third, Kohli's answer to the IJ's finding of no prejudice is that (a) prejudice is not required where there is a lack of jurisdiction, and (b) she did establish prejudice because the outcome would have

---

[2]All statutory references are to Title 8 of the United States Code unless otherwise indicated.

been different, e.g., the proceedings would have been terminated. Finally, Kohli argues that the IJ's invocation of the presumption of regularity improperly shifts the burden of establishing jurisdiction from the government to her.

B.   *Applicable legal standards*

The sufficiency of the NTA is a question of law, which is reviewed de novo. *Lopez-Urenda v. Ashcroft*, 345 F.3d 788, 791 (9th Cir. 2003) (holding that legal determinations by the BIA and due process claims are reviewed de novo).

**[1]** The process of removal is commenced by giving written notice in person to the alien informing him or her of:

(A)   The nature of the proceedings against the alien.

(B)   The legal authority under which the proceedings are conducted.

(C)   The acts or conduct alleged to be in violation of law.

(D)   The charges against the alien and the statutory provisions alleged to have been violated.

8 U.S.C. § 1229(a)(1)(A)-(D). The actual removal proceeding to determine the deportability or inadmissibility of an alien "is commenced by the filing of a notice to appear with the immigration court." 8 C.F.R. § 1239.1(a). A regulation further provides that this notice shall be given in accordance with 8 C.F.R. § 239, which authorizes a number of officials to issue a NTA.[3]

---

[3] 8 C.F.R. § 239.1(a) reads:

Issuance of notice to appear. Any immigration officer, or supervisor thereof, performing an inspection of an arriving alien at a

**[2]** Thus, the issuance of a NTA pursuant to 8 C.F.R. § 239.1(a) does not create jurisdiction in the Immigration Court. Rather, jurisdiction vests in the Immigration Court "when a charging document is filed" with the Immigration Court. 8 C.F.R. § 1003.14. *See also* 8 C.F.R. § 1239.1(a). Section 1003.14 requires a certificate showing service, but does not suggest that there are any other jurisdictional requirements.[4]

port-of-entry may issue a notice to appear to such alien. In addition, the following officers, or officers acting in such capacity, may issue a notice to appear:

(1) District directors (except foreign); (2) Deputy district directors (except foreign); (3) Chief patrol agents; (4) Deputy chief patrol agents; (5) Assistant chief patrol agents; (6) Patrol agents in charge; (7) Assistant patrol agents in charge; (8) Field operations supervisors; (9) Special operations supervisors; (10) Supervisory border patrol agents; (11) Service center directors; (12) Deputy service center directors; (13) Assistant service center directors for examinations; (14) Supervisory district adjudications officers; (15) Supervisory asylum officers; (16) Officers in charge (except foreign); (17) Assistant officers in charge (except foreign); (18) Special agents in charge; (19) Deputy special agents in charge; (20) Associate special agents in charge; (21) Assistant special agents in charge; (22) Resident agents in charge; (23) Supervisory special agents; (24) Directors of investigations; (25) District directors for interior enforcement; (26) Deputy or assistant district directors for interior enforcement; (27) Director of detention and removal; (28) Field office directors; (29) Deputy field office directors; (30) Supervisory deportation officers; (31) Supervisory detention and deportation officers; (32) Directors or officers in charge of detention facilities; (33) Directors of field operations; (34) Deputy or assistant directors of field operations; (35) District field officers; (36) Port directors; (37) Deputy port directors; (38) Supervisory service center adjudications officers; (39) Unit Chief, Law Enforcement Support Center; (40) Section Chief, Law Enforcement Support Center; or (41) Other officers or employees of the Department or of the United States who are delegated the authority as provided by 8 CFR 2.1 to issue notices to appear.

[4] 8 C.F.R. § 1003.14 states, in relevant part:

**[3]** When presented with allegations that an agency has violated its own regulation, we have recognized that such a claim is subject to judicial review, but have held that in order to be granted relief "the claimant must show that he was prejudiced by the agency's mistake." *Patel v. INS*, 790 F.2d 786, 788 (9th Cir. 1986). In *United States v. Cerda-Pena*, 799 F.2d 1374, 1377 (9th Cir. 1986), we reiterated:

> This Circuit has held that a violation of an INS regulation does not invalidate a deportation proceeding unless the regulation serves a purpose of benefit to the alien. *United States v. Rangel-Gonzales*, 617 F.2d 529, 530 (9th Cir. 1980). In addition, even if the regulation does not serve a purpose of benefit to the alien, a violation of that regulation will not render a deportation unlawful unless the violation prejudiced the interests of the alien protected by the regulation. [footnote omitted] *Id.* Thus, the violation of an INS regulation will render a deportation unlawful if the regulation in question serves a purpose of benefit to the alien and its violation prejudiced the interests of the alien that it was intended to protect. *Id.*

*See also United States v. Calderon-Medina,* 591 F.2d 529, 531 (9th Cir. 1979) (holding that a claimant may only be granted relief based on a violation of an INS regulation if "the regulation serves a purpose of benefit to the alien" and "the violation prejudiced interests of the alien which were protected by the regulation").[5] The BIA has taken a similar

---

(a) Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service. The charging document must include a certificate showing service on the opposing party pursuant to § 1003.32 which indicates the Immigration Court in which the charging document is filed.

[5]We recognize that there is some authority in other circuits that "when a regulation is promulgated to protect a fundamental right derived from

approach to alleged violations of immigration regulations. *Matter of Jorge Tadeo Carrera Hernandez*, 21 I. & N. Dec. 224, 226 (BIA 1996) ("[T]his Board has consistently held that the violation of a regulatory requirement invalidates a proceeding only where the regulation provides a benefit to the alien and the violation prejudiced the interest of the alien which was to be protected by the regulation") (citing *Matter of Garcia Flores*, 17 I. & N. Dec. 325 (BIA 1980)).

C. *Application of the legal standards to petitioner's contentions*

Under the applicable case law, statutes and regulations it appears that to be entitled to relief, Kohli must show that the Immigration Court lacked jurisdiction or that she was prejudiced by the alleged defect in the NTA. We conclude that she has failed to make either showing.

Kohli's argument that the Immigration Court lacked jurisdiction is not based on the regulations that provide the Immigration Court with jurisdiction, but on the underlying NTA that issued pursuant to a separate regulation. In other words, she does not contend that the government did not follow the regulations that gave the Immigration Court jurisdiction, but argues that an alleged defect in the NTA deprived the court of jurisdiction. But in order to make a persuasive argument that an alleged defect in the NTA compromised the Immigration Court's jurisdiction, Kohli must show that the defect had some impact on her rights.

[4] Notwithstanding Kohli's arguments, the NTA in this case certainly provided her with all the information required

the Constitution or a federal statute, and the INS fails to adhere to it, the challenged deportation proceeding is invalid and a remand to the agency is required." *Waldron v. INS*, 17 F.3d 511, 518 (2d Cir. 1994). We decline to consider whether we should adopt such a standard because here the alleged defect does not concern a regulation "promulgated to protect a fundamental right."

by 8 U.S.C. § 1229(a)(1)(A) through (D). It carried the heading "U.S. Department of Justice, Immigration and Naturalization Service," and stated that the removal proceedings were brought "under section 240 of the Immigration and Nationality Act." The NTA fully informed Kohli of the charges against her and directed her to appear before an IJ to show why she should not be removed from the United States.

**[5]** The name and title of the officer who issued the NTA were not legible, but Kohli has not shown that these were required by any statute or regulation. Kohli's NTA was on a Form I-862, as prescribed by 8 C.F.R. § 299.1. Kohli, however, has failed to trace the inclusion on Form I-862 of space for the name and title of the issuing officer directly to any statute or regulation. As Kohli has not shown that any statute or regulation requires the inclusion of the name and title of the issuing officer on the NTA, it follows that she has not shown that the fact that the name and title on her NTA are illegible constitutes a violation of a regulation.

**[6]** The Immigration Court's jurisdiction is also supported by the well established principle of federal law that administrative agencies are entitled to a presumption that they "act properly and according to law." *Federal Communications Commission v. Schreiber*, 381 U.S. 279, 296 (1965). "In the absence of clear evidence to the contrary, courts presume that public officers properly discharge their duties . . . ." *County of Del Norte v. United States*, 732 F.2d 1462, 1468 (9th Cir. 1984) (citing 3 K. Davis, *Administrative Law Treatise* § 17.6 (2d ed. 1980) (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926))). *See also United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.") (internal citations omitted); *see also INS v. Miranda*, 459 U.S. 14 (1982).

**[7]** Kohli's claim that the invocation of the presumption of regularity improperly shifted the burden of establishing jurisdiction onto her is not well taken. The government met its burden of establishing jurisdiction in the Immigration Court by issuing a NTA pursuant to 8 U.S.C. § 1229(a)(1), and then filing that notice to appear with the Immigration Court. *See* 8 C.F.R. §§ 1003.14, 1239.1(a). Furthermore, Kohli admitted to proper service, which is required by 8 U.S.C. § 1229(a)(1). Thus, the presumption of regularity only comes into play because Kohli challenges the government's prima facie showing of jurisdiction. A presumption can be rebutted. Here, however, Kohli has not come forward with any evidence indicating that the person who signed the NTA lacked the authority to do so. Indeed, in light of the number of officials that may sign a NTA pursuant to 8 C.F.R. § 239.1(a), it appears that the decision to issue a NTA is not limited to the discretion of highly placed officers, and it seems unlikely that the official who signed the NTA was not authorized to do so. Given the lack of any indication that the NTA was not properly issued, and the lack of any prejudice to Kohli, this court may presume that the agency officials properly discharged their official duties pertaining to the issuance of Kohli's NTA.

**[8]** In addition, there is no evidence that Kohli was prejudiced by the alleged defect in the NTA. When Kohli appeared before the IJ, she accepted service of the NTA, admitted the factual allegations in the NTA, and conceded removability. Furthermore, when she subsequently filed a motion to terminate proceedings before the IJ, she did not seek to withdraw any of her concessions and admissions. She did not request that the record be supplemented to clearly state the name and title of the official who issued the NTA. Instead, she argued only that the lack of a legible name and title deprived the IJ of jurisdiction. Because Kohli has not shown, and on this record cannot show, that the alleged defect obscured the charges against her or obstructed her ability to respond to the charges and present her requests for asylum and other relief, the alleged defect was not prejudicial.

We further note that a careful reading of the case cited by Kohli, *Matter of G-Y-R-*, 23 I. & N. Dec. 181 (BIA 2001), supports our determination that the alleged defect in the NTA was not jurisdictional, and also suggests the relationship between jurisdiction and prejudice. In that case, the issue was whether an IJ could order an alien removed in absentia when the alien had never received notice of the removal hearing. *Id.* at 183. In other words, the question was whether the IJ had jurisdiction over the alien even though she was absent. The BIA first determined that the agency had failed to properly serve the alien with the NTA as required by the applicable statutes. The BIA noted that the alien's constitutional right of due process of law required that she be provided with notice of the proceedings and an opportunity to be heard. *Id.* at 186. The BIA, however, then commented that even if the agency failed to serve the alien as required by the statute, her constitutional right to notice could be met through a showing that the alien received actual notice. *Id.* Because the alien had not received actual notice, the BIA proceeded to consider a second statutory provision which would allow a finding that the alien had received constructive notice. *Id.* at 187-90. The BIA determined that the agency had failed to comply with the statutory requirements for establishing constructive notice, and concluded that this failure, coupled with the alien's failure to receive actual notice, required a grant of relief.

For our purposes, *Matter of G-Y-R-* has two critical holdings. The first is that the government's failure to serve the alien as required by the applicable statutes did not deprive the IJ of jurisdiction. The IJ would retain jurisdiction if the agency could show either that the alien had received actual notice or that it had complied with the statutory provisions for constructive notice. Since the government's failure to comply with a notice requirement in *Matter of G-Y-R-* did not automatically deprive the IJ of jurisdiction, it follows that in this case the alleged defect in Kohli's NTA does not automatically deprive the Immigration Court of jurisdiction.

Second, in *Matter of G-Y-R-* the BIA's determination that the IJ lacked jurisdiction was based on the finding of a denial of the constitutional right to due process of law because the alien had not received actual or constructive notice of the proceedings. Accordingly, the alien was prejudiced because without notice she had no opportunity to respond to the charges against her. In this case, the alleged defect in the NTA does not implicate any constitutional right and did not prejudice Kohli because it did not interfere with her understanding of the charges against her or her ability to respond to those charges. Thus, *Matter of G-Y-R-* supports our determination that Kohli has failed to demonstrate that the alleged defect in her NTA deprived the Immigration Court of jurisdiction.[6]

[9] We have reviewed the adequacy of the NTA de novo. *See Lopez-Urenda*, 345 F.3d at 791. We conclude that the agency complied with the regulations that vest jurisdiction in the Immigration Court and that the alleged defect in the NTA did not deprive the Immigration Court of jurisdiction. Our conclusion is supported by our determinations that Kohli has failed to demonstrate that (1) she did not have notice of the charges against her, (2) the alleged defect was a direct violation of any applicable statute or regulation, (3) the presumption of regularity for agency action does not apply, and (4) she was prejudiced by the alleged defect. Thus, Kohli has failed to show that the alleged defect violated any regulation intended to benefit her or that she was prejudiced by that violation. *See Cerda-Pena*, 799 F.2d at 1377. The IJ properly denied Kohli's motion to terminate the proceedings.

---

[6]The other cases cited by Kohli are not applicable. Both *Cardenas-Uriate*, 227 F.3d 1132, and *Olivera-Gracia*, 328 F.3d 1083, concerned specific statutory limitations on the jurisdiction of this court to hear petitions to review certain deportation orders. Kohli has proffered no authority that directly supports her claim that a defect in a NTA may deprive the Immigration Court of jurisdiction.

### III.  Petitioner is not entitled to withholding of removal or relief under the CAT.

A.  *Petitioner's contentions*

As Kohli admits that she is not eligible for asylum,[7] her credibility arguments concern only her requests for withholding of removal and relief under the CAT. Kohli attempts to explain away the inconsistencies between her testimony and her declaration. She claims that: (a) although she initially testified that she only participated in demonstrations concerning human rights, she later clarified her testimony; (b) the person who assisted her in preparing her declaration "mistakenly understood her 5 hour detention to amount to being held over night;" and (c) she was grabbed and pushed by the police officer and that the definition of torture is broad enough to include such activity. She also explains that the association is headquartered in Chandigarth, a city in Punjab, but that her activities with the association took place in New Delhi. Kohli admits that her testimony was inconsistent on some points, but urges that the inconsistencies are minor and insignificant in nature.

B.  *Applicable legal standards*

[10] In order to qualify for withholding of removal, an applicant must demonstrate that it is more likely than not that she would be subject to persecution based on one of the grounds specified in 8 U.S.C. § 1101(a)(42)(A). *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001). We have noted that persecution is "the infliction of suffering or harm upon those

---

[7]The IJ found Kohli ineligible for asylum because she had failed to apply for asylum within a year of arriving in the United States as required by 8 U.S.C. § 1158(a)(2)(B), and because she had failed to establish changed circumstances within the meaning of 8 U.S.C. § 1158(a)(2)(D). Kohli recognizes that these findings are not subject to judicial review under 8 U.S.C. § 1158(a)(3).

who differ (in race, religion or political opinion) in a way regarded as offensive," and "is an extreme concept that does not include every sort of treatment our society regards as offensive." *Mansour v. Ashcroft*, 390 F.3d 667, 672 (9th Cir. 2004) (internal quotation marks and citations omitted). Relief under the CAT, on the other hand, requires a showing "that it is more likely than not that [the applicant] would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). *See also Kamalthus v. INS*, 251 F.3d 1279, 1283 (9th Cir. 2001).

Where the BIA reviews and incorporates the IJ's decision, we treat the incorporated parts of the IJ's decision as the BIA's decision. *Molina-Estada v. INS*, 293 F.3d 1089, 1093 (9th Cir. 2002). We give deference to the IJ's determination of adverse credibility, and like any factual finding, it is "conclusive unless any reasonable adjudicator would be compelled to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Chebchoub v. INS*, 257 F.3d 1038, 1042 (9th Cir. 2001) ("Chebchoub cannot prevail unless he demonstrates that any reasonable factfinder would necessarily conclude that he is eligible for relief from deportation.").

C.  *Application of the legal standards*

**[11]** Kohli's arguments notwithstanding, the IJ's finding of adverse credibility is substantially supported by the discrepancies between Kohli's testimony, her declaration, and her letter of membership. For example, Kohli's declaration stated that she had been "kept at the police station over night and physically abused," but before the IJ she testified that she had only been kept at the station for a couple of hours and the only "abuse" was that an officer pushed her down into a chair. Kohli's attempt to divert blame to the person who helped her prepare her declaration is not persuasive because Kohli is fluent in English and had no need for assistance in completing her declaration. Also, as noted by the IJ, while the letter of association membership stated that Kohli joined the associa-

tion in Punjab, India, and was "victimized and jailed due to her support and work on Human rights and relations and [sic] Chandigarth-Punjab," Kohli's testimony before the IJ was all about her activities in New Delhi, which is some distance from Chandigarth. These inconsistencies are neither minor nor insignificant, but are central to Kohli's claim of past persecution and abuse. Accordingly, the inconsistencies support the IJ's finding of adverse credibility. *See Guo v. Ashcroft*, 361 F.3d 1194, 1201 (9th Cir. 2004) (reiterating that inconsistencies must go to the heart of an asylum claim to justify an adverse credibility finding). As Kohli has not presented compelling evidence of her credibility, the IJ's adverse credibility determination should not be disturbed.

We further note that even if the IJ's adverse credibility finding were suspect, we agree with his alternate finding that accepting Kohli's testimony as true, she has not shown a likelihood of persecution should she be returned to India.

The IJ reasonably held:

> the Court finds that even if [Kohli's] testimony was credible, what she experienced does not rise to the level of persecution. According to [Kohli], she had one brief detention of two or three hours in which she was not mistreated. She was simply asked questions and then released. There was another occasion in which the police told her to go home and stop rallying and she did. There was another occasion in which the police called her grandmother and said that they thought it was in her best interest to stop participating with these activists. This strikes the Court as not terribly different than the authorities in the United States calling a parent or a grandparent in this instance and suggesting that a child was hanging around with the wrong crowd of people. This is certainly not a threat to [Kohli's] life and freedom.

**[12]** Finally, regardless of whether Kohli's version of her treatment in India is credible or not, she has failed to demonstrate that there is any reasonable likelihood that she will be tortured if returned to India. Accordingly, she is not entitled to any relief under the CAT.

## IV.  Conclusion

Although the signature and title of the issuing official on Kohli's NTA were not legible, the IJ properly denied her motion to terminate proceedings because she has not shown that the alleged defect deprived the Immigration Court of jurisdiction. Moreover, Kohli has not shown that the alleged defect was contrary to a regulation designed to benefit her or that she was prejudiced by the alleged defect. *See Cerda-Pena*, 799 F.2d at 1377. Also, our review of the record reveals that the IJ's adverse credibility determination was supported by substantial evidence, and that Kohli has not shown that she is entitled to withholding of removal, or relief under the CAT. Accordingly, her petition for review is **DENIED**.