FILED

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SEP 19 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50506 |
| Plaintiff - Appellee, | D.C. No. 3:10-cr-02343-L-1 |
| v. | |
| JUAN MANUEL LACHINO-ESTRADA, | MEMORANDUM[*] |
| Defendant - Respondent. | |

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted August 29, 2011
Pasadena, California

Before: SCHROEDER and GOULD, Circuit Judges, and SEEBORG, District
Judge.[**]

During his prosecution for being a removed alien found within the United

States in violation of 8 U.S.C. § 1326, appellant Juan Manuel Lachino-Estrada

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Richard Seeborg, United States District Judge for the
Northern District of California, sitting by designation.

("Lachino") moved to dismiss the indictment on grounds that the underlying removal order was invalid. Following the denial of that motion, Lachino entered a conditional guilty plea, reserving the right to appeal the denial of the motion to dismiss. Lachino was thereafter sentenced to time served and a one-year period of supervised release. Because we agree that the failure of the immigration judge ("IJ") to advise Lachino of his eligibility for voluntary departure and to give him the opportunity to develop the issue constituted a violation of due process, we vacate the sentence and remand to permit the district court to determine whether this violation prejudiced Lachino.

We review de novo a claim that defects in the underlying deportation procedure rendered it invalid for use in criminal proceedings. *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1203 (9th Cir. 2004). A defendant charged with illegal reentry after removal under § 1326 may collaterally attack the removal order. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38, 107 S. Ct. 2148, 95 L. Ed. 2d 772 (1987). To sustain a collateral attack, a defendant must show: (1) that he or she exhausted all available administrative remedies to appeal the removal order; (2) that the underlying removal proceedings at which the order was issued "improperly deprived [him or her] of the opportunity for judicial review," and; (3) that "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). "An

2

underlying removal order is fundamentally unfair if: (1) [a defendant's] due process rights were violated by defects in the underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (internal quotation marks omitted).

Here, Lachino initially contends that the IJ incorrectly believed him to be ineligible for voluntary departure, and therefore denied him relief as the result of legal error, rather than through a proper exercise of discretion. Lachino has not met his burden to show the IJ misunderstood the facts or the law regarding his eligibility. *See Kohli v. Gonzales*, 473 F.3d 1061, 1068 (9th Cir. 2007) (noting the "well established principle of federal law that administrative agencies are entitled to a presumption that they 'act properly and according to law.'" (citations omitted)). There is no dispute, however, that the IJ did not expressly advise Lachino he was entitled to request voluntary departure and did not offer him the opportunity to present argument or evidence in support of such relief.

The Government contends that as long as the IJ actually exercised discretion in considering Lachino for voluntary departure (or, more precisely, if Lachino cannot establish the contrary), then there are no grounds to vacate his conviction. The precedents make clear, however, that "[t]he requirement that the IJ inform an

alien of his or her ability to apply for relief from removal is mandatory, and failure to so inform the alien of his or her eligibility for relief from removal is a denial of due process that invalidates the underlying deportation proceeding." *Ubaldo-Figueroa* at 1050 (9th Cir. 2004) (internal citations and quotation marks omitted); *see also United States v. Arrieta,* 224 F.3d 1076, 1079 (9th Cir. 2000) ("[W]here the record contains an inference that the petitioner is eligible for relief from deportation, the IJ must advise the alien of this possibility and give him the opportunity to develop the issue." (internal citations omitted).)

The Government argues that an alien need not be expressly advised of the potential availability of voluntary departure, provided the IJ in fact considered it. The Government insists there is no meaningful distinction between an IJ saying, "I've considered a few factors and will deny voluntary departure" as opposed to, "you're eligible for voluntary departure; however, after considering a few factors, I am denying voluntary departure." Even assuming an IJ only used the latter formulation, however, the alien would at least be aware that he had been denied a form of relief for which he or she was eligible, which could impact his or her decision regarding waiving the right to appeal. *See Ubaldo-Figueroa*, 364 F.3d at 1049 ("We do not consider an alien's waiver of his right to appeal his deportation order to be considered and intelligent when the record contains an inference that

4

the petitioner is eligible for relief from deportation, but the Immigration Judge fails to advise the alien of this possibility." (internal citations and quotation marks omitted)).  Moreover, even in the latter example given by the Government, the IJ would have failed to comply with the requirement to "give [the alien] the opportunity to develop the issue." *Arrieta,* 224 F.3d at 1079 (internal citations and quotation marks omitted).

To support its contention that there is no such requirement notwithstanding *Ubaldo-Figueroa*, *Arrieta*, and similar cases, the Government relies primarily on the non-precedential decision in *United States v. Quintana-Ramos*, 375 Fed. Appx 703 (9th Cir. 2010) (unpublished).  In that case, the court rejected an argument that the IJ had improperly applied a "categorical policy" to deny voluntary departure, and concluded instead that the judge had made the decision through an exercise of discretion based on the particular facts before him. *Id*. at 705.  The *Quintana* court then held there had been no due process violation, without any discussion of whether the defendant had been advised of his eligibility for voluntary departure and given an opportunity to seek it. *Id.*

In tacit recognition that the memorandum disposition contains no discussion of the issue relevant to this case, the Government cites to the *briefing* presented in *Quintana* to show that the appellant presented due process arguments similar to

those made here.  *Sub silentio* rejection of such arguments in a non-precedential disposition, however, is not a basis for disregarding the clear rule expressed in *Ubaldo-Figueroa, Arrieta*, and the other authorities cited therein.  Accordingly, by both failing to advise Lachino that he was eligible for voluntary departure and then not giving him at least some meaningful opportunity to request it and to present reasons why it would be warranted, the IJ failed to provide Lachino with the process which he was due.

To establish prejudice from the deprivation of his due process rights, Lachino need show only that he "had a 'plausible' ground for relief from deportation." *Ubaldo-Figueroa*, 364 F.3d at 1050 (citation omitted).  He "does not have to show that he actually would have been granted relief." *Id.*  The Government argues that this standard is not applicable to Lachino, because he is an alien with what the Government asserts is a "serious criminal history." As such, the Government contends, Lachino must instead show "unusual or outstanding equities" to be entitled to relief. *See United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1056–57 (9th Cir. 2003) (noting that when seeking discretionary waiver from deportation, an applicant "who has a serious criminal history must demonstrate unusual or outstanding equities in order to receive relief."). To the extent the Government is suggesting this is an alternative standard, it

6

misunderstands the relationship between the requirement for some aliens to establish "unusual or outstanding equities" and the test applicable when a court evaluates a collateral challenge to a prior removal order in cases like this one. The standard is always whether the defendant has shown "plausible" grounds on which he or she might have been granted relief by the IJ. When an alien's criminal history is such that he or she would have been required to demonstrate "unusual or outstanding equities" to the IJ, that merely makes the proffered grounds for relief less plausible. *See Gonzalez-Valerio*, 342 F.3d at 1057 (evaluating whether defendant had shown plausible grounds for relief, given his serious criminal history).

Here, the district court did not reach the question of whether Lachino had shown "plausible" grounds for relief, including the extent to which he might or might not have been required to show unusual equities. Accordingly, remand is appropriate to permit the district court to decide the prejudice issue in the first instance. *See United States v. Leon-Paz*, 340 F.3d 1003, 1007 (9th Cir. 2003) ("We . . . remand the case to the district court so that it can consider whether [defendant] was prejudiced by the deprivation of his due process rights in his 1997 removal proceeding. If he was not prejudiced, the district court may reinstate the

conviction and sentence.  If he was prejudiced, the district court must dismiss the indictment.")

**VACATED AND REMANDED**.